26278. KEMP v. THE STATE.

SUBMITTED JANUARY 11, 1971—DECIDED JANUARY 29, 1971.

*Mitchell & Mitchell, William T. Boyett,* for appellant.

*David N. Vaughan, District Attorney, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, Charles B. Merrill, Jr., Assistant Attorneys General,* for appellee.

GRICE, Justice. Convicted of murder, sentenced to life imprisonment and his motion for new trial denied, Ralph Kemp appealed to this court. He was indicted by the grand jury of Bartow County and was tried in the superior court of that county. His motion for new trial contained, besides the general grounds, two special ones.

His enumerations of error stem from the denial of his motion for new trial and pertain to: (1) admission in evidence of testimony as to an oral statement or confession by the defendant; (2) failure of the court to charge the jury as to the law of voluntary manslaughter; and (3) denial of the general grounds.

We treat these enumerations in that order.

■ The appellant complains that the statement or confession was obtained when he was incapable of understanding, and therefore did not waive, his constitutional right against self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution as enunciated in Miranda v. Arizona, 384 U. S. 436 (88 SC 1602, 16 LE2d 694, 10 ALR3d 974).

This complaint is not meritorious.

It is of decisive consequence that when this statement or confession was made the defendant was not in the custody of a law enforcement officer and he was not deprived of his freedom of action in any significant way. The undisputed evidence as to this was that shortly after the homicide an agent of the Georgia Bureau of Investigation went to the house where the defendant lived and where the difficulty began; that he found the defendant there; that he advised him of his rights under Miranda v. Arizona, supra; and that the defendant then told him that he knew his rights and did not mind telling him how it happened. The defendant then made the statement or confession. It was after this that he was taken into custody.

Under these circumstances the guarantee against self-incrimination was not applicable. The mandates of the Miranda case apply to in-custody interrogation, not to pre-custodial questioning, as here. The Miranda case itself makes this clear: "There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the fifth amendment. . . To summarize, we here hold that *when* an individual is *taken into custody* or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized . . ." P. 478. (Emphasis supplied.)

It therefore follows that it is not necessary to determine whether the defendant, due to intoxication, was incapable of making a valid waiver of the right against self-incrimination.

■ The second enumeration, that the court should have instructed the jury on the law of voluntary manslaughter, is likewise not tenable. The defendant excepted as to this but the court declined to give any further instructions.

The evidence as to the homicide itself was that testified to by the G. B. I. agent in recounting the defendant's oral statement or confession. It was, in substance, that the defendant and the deceased had an argument in the defendant's house over some whiskey; that the deceased slapped the defendant and pushed him down on the bed; that the deceased then left the house and as he

was walking away said, "I'll be back," or, "I'll be right back"; that after he had walked about 40 feet away from the house the defendant got a rifle, and without aiming it, fired the fatal shot from the front door.

Apparently no witness saw the slaying. However, one person testified that immediately after the shooting she said, "Wonder who done it," and the defendant replied, "I did and if he raises up again I'm gonna shoot him again," and went into the house with the rifle. Another person swore that she saw the defendant in the house loading or unloading a gun.

The account given by the defendant in his unsworn statement to the jury was substantially the same as above.

As we view what transpired, the law of voluntary manslaughter was not involved. From what appears, the defendant did *not* act "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person," as contemplated by the definition in *Code Ann.* § 26-1102 (Ga. L. 1968, pp. 1249, 1276). On the contrary, the deceased had broken off the encounter and was walking away from the defendant when the latter shot him. It was not error to refuse to charge on this subject. See in this connection, *Cochran v. State,* 213 Ga. 706 (3) (100 SE2d 919).

■ The third enumeration, based upon the general grounds, cannot be sustained since the evidence referred to above amply supports the verdict.

*Judgment affirmed. All the Justices concur.*