### 48840. CAITO et al. v. THE STATE.

CLARK, Judge. This appeal is by two defendants who were convicted of violation of the Georgia Drug Abuse Control Act for possession of more than one ounce of marijuana.

A hearing was held on a motion to suppress. There the state presented the testimony of two witnesses, one being a state trooper and the other a deputy sheriff. The motion to suppress was denied, which order is one of the grounds of error.

At this hearing the trooper testified that during a night patrol duty on State Highway 41, he observed an automobile with two occupants. Following them he noticed the passenger continually looked to the rear, an action which he regarded as suspicious. This suspicion was heightened as he saw this passenger "was more or less fumbling around with something in the car." (T. 3 of Motion to Suppress Hearing). After following the automobile at a distance of six to eight car lengths for approximately five miles he stopped them in the City of Warm Springs for the reason that "They was driving approximately five to ten miles an hour above the speed limit and acting very suspicious." (Ibid. T. 3).

Upon the car being halted the trooper first asked the driver to step

out and upon compliance requested the driver's license. He also inquired as to vehicle ownership. During this interval he saw the passenger "was still fumbling with the glove compartment, the console in the floorboard, and I decided then that I should check 'em and I asked 'em to step out of the car." (Ibid. T. 4). Both occupants then went to the rear of the car where the usual "pat down" was performed. Then, in reply to the policeman's inquiry as to vehicle ownership the passenger replied that it belonged to him. When the officer asked for confirmation documents, the passenger answered that they were in the glove compartment. The officer's testimony was that "I said 'Would you mind getting the paper?' He said 'No.' " (Ibid. T. 4). Defendant passenger proceeded without complaint to go to the car with the officer following him. Upon defendant opening the glove compartment the officer observed by means of his flashlight that there was on top of the papers a plastic bag containing leafy green vegetation thought to be marijuana. "I asked him what was in the bag, he said, 'Well, you know,' I said, 'Whose is it?' and he said 'It's mine,' and at that time I called the deputy." (Ibid. T. 4).

The state trooper did not make a search of the vehicle and did not then or subsequently make charges for the speeding offense.

The deputy sheriff's testimony at the suppression hearing was that on arrival the doors to the car and the trunk were closed but the glove compartment was open and he observed and seized "four bags of marijuana in the glove console which was in open, plain view." (Ibid. T. 14). He placed the defendants under formal arrest and called for a wrecker to remove the car to the local jail. "We stayed with the automobile until the wrecker arrived, and then the subjects and myself and Deputy Parks followed the automobile to the jail. We then took the subjects and let them stand by the car while I continued the search." (Ibid. T. 14). This search was without a warrant but resulted in a discovery of a brown paper bag under the hood. Inside this container were twelve plastic bags of green leafy material which subsequently was found by the State Crime Laboratory to be marijuana.

At the trial counsel for the defendants preserved their objections as made during the in limine hearing by stipulation agreement. The trooper and deputy testified substantially as they had previously. Additionally, the trooper said that at the time he saw the bag in the glove compartment the defendant car owner said "You got me." The court overruled the defense objection to this statement that it was inadmissible "unless he lays a foundation

that he's advised the man of his rights at the time he made the statement." (T. p. 6). The trooper also added that during the pat-down bodily search he had ordered the defendants to empty their pockets and put the contents on top of the automobile. (T. p. 9).

In addition to the representative from the State Crime Laboratory who identified the substance, the state called the county sheriff to the stand. Defense counsel objected because he had not been sequestered and because his name had not been on the list of state witnesses submitted in response to demand by defendants. The district attorney explained his oversight as being due to his having "about 70 cases on the calendar." The court permitted the sheriff to testify. This testimony was limited to his handling of the marijuana from the time of his being apprised of the seizure and his having taken it to the State Crime Laboratory for analysis. The ruling that enabled the sheriff to be put on the stand is among the assignments of error.

Other error enumerations deal with refusals to charge as requested by defense and a claim that in view of the evidentiary errors complained of that the trial court erred in denying their motion for a directed verdict of acquittal.

1. "An arrest is accomplished whenever the liberty of another to come and go as he pleases is restrained, no matter how slight such restraint may be. The defendant may voluntarily submit to being considered under arrest without any actual touching or show of force, and the arrest is complete. [Cits.] The mere fact that the officer testifying with regard to these occurrences stated at one place in his testimony that after he had completed the search he 'then placed him under arrest' does not alter the fact that the defendant was actually under arrest from the moment the police officers approached the automobile which he was driving and caused him to alight therefrom . . ." *Clements v. State*, 226 Ga. 66, 67 (172 SE2d 600). "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U. S. 1, 16 (88 SC 1868, 20 LE2d 889); *Holtzendorf v. State*, 125 Ga. App. 747, 750 (188 SE2d 879).

2. The arrest here was valid since the automobile was exceeding the speed limit, this being in violation of Code Ann. §§ 68-1626 through 1628 and is punishable as a misdemeanor under Code Ann. § 68-9926. Also, it should be noted an arrest may be made "without a warrant if the offense is committed in his [an officer's]

presence." Code § 27-207.

3. The officer testified that after defendants got out of the car, he patted down both defendants for "any bulky materials they might have had in the pockets" (T. 9) and made them expose the contents of their pockets. Whether this arrest would be construed as a custodial arrest bringing the search within United States v. Robinson, 414 U. S. — (94 SC 467, 38 LE2d 427) and Gustafson v. Florida, 414 U. S. — (94 SC 488, 38 LE2d 456) is not before this court, as no evidence from this search of the pockets was found to be contraband nor introduced at the trial. "It is 'harmless error' to overrule a motion to suppress evidence which is never introduced. . ." *Walker v. State,* 130 Ga. App. 597.

4. Was the contraband admissible under the "plain view" doctrine? A traffic officer acts reasonably and within his authority when asking to see owner's registration papers when a vehicle is halted by reason of his observation of a law violation. When the officer asked for papers confirming the oral statement of ownership, defendant replied these were in the glove compartment. As pointed out in this opinion's statement of facts, the compliance with this request was voluntary. The officer did not enter the car but remained outside at the door in a legally correct location. See *Lewis v. State,* 126 Ga. App. 123, 125 (190 SE2d 123). Whatever was observed would fall within the plain view doctrine. *Anderson v. State,* 123 Ga. App. 57, 59 (179 SE2d 286); *Bass v. State,* 123 Ga. App. 705 (2) (182 SE2d 322).

Defendants contend that the plain view doctrine does not apply because of use of a flashlight added to the fact that the opening of the glove compartment was at the officer's request. In the first instance the flashlight here was not used to search the car but limited to the glove compartment. In shining it into the opened glove compartment, it was reasonable to assume he may have been checking for weapons or that the light would aid defendant in finding the title document among the pile of papers. Thus there was no exploratory search such as was condemned in Dyke v. Taylor Implement Mfg. Co., 391 U. S. 216, 221 (88 SC 1472, 20 LE2d 538) and Fahy v. Connecticut, 375 U. S. 85 (84 SC 229, 11 LE2d 171).

Use of a flashlight has been upheld in such plain view cases as Marshall v. United States, 422 F2d 185 (5th Cir. 1970); Walker v. Beto, 437 F2d 1018 (5th Cir. 1971); United States v. Wright, 449 F2d 1355 (D.C. Cir. 1971). Therefore the officer's limited use of the flashlight here did not prevent the application of the plain

view doctrine in this case.

Concerning the officer's request, this directive had a proper basis. Substantiation of the officer's good faith was the absence of any evidence that this served as an excuse for an arbitrary exploratory search.

The evidence indicates defendant's production of the ownership papers was voluntary.

Consequently, the marijuana comes within the plain view doctrine: the observer had a right to be where he was at the time he inadvertently saw the contraband; it was immediately apparent to him that the vegetation was contraband; and there were exigent circumstances, that of a moving car. See Harris v. United States, 390 U. S. 234 (88 SC 992, 19 LE2d 1067); Coolidge v. New Hampshire, 403 U. S. 443 (91 SC 2022, 29 LE2d 564).

5. Additionally, defendants contend that the later search of the vehicle was illegal. This search took place at the station after defendants were there incarcerated. Chambers v. Maroney, 399 U. S. 42, 52 (90 SC 1975, 26 LE2d 419) held that "On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeing target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." This case further states in a footnote on the same page that "It was not unreasonable in this case to take the car to the station house. All occupants in the car were arrested in a dark parking lot in the middle of the night. A careful search at that point was impractical and perhaps not safe for the officers, and it would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house." As in our case probable cause (seeing marijuana in the glove compartment) existed for a search of the car on the spot. Therefore since substantially the same conditions exist sub judice as in the Maroney case, probable cause existed for a warrantless search of the vehicle at the station house.

*Rowland v. State,* 117 Ga. App. 577 (161 SE2d 422) cited by defendant is distinguished since in that case there was a search of the trunk without consent. Here there is no evidence of

reluctance on defendant's part when asked to retrieve the bill of sale. His voluntary act in opening the glove compartment differentiates the *Rowland* situation from the facts in the instant case.

6. Defendants contend that the trial court erred in permitting the officer's testimony as to the admission by one of the defendants that: "You got me." *Kemp v. State,* 227 Ga. 251, 252 (179 SE2d 920) quoted from the Miranda case, that "Volunteered statements of any kind are not barred by the fifth amendment . . ." Accordingly, defendant's voluntary ejaculation of "You got me" is not inadmissible because of a failure to give the warnings required by the Escobedo and Miranda cases (Escobedo v. Illinois, 378 U. S. 478 (84 SC 1758, 12 LE2d 977); Miranda v. Arizona, 384 U. S. 436, 473 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974)). See *Dennis v. State,* 226 Ga. 341, 343 (2) (175 SE2d 17).

Furthermore, this statement was admissible as a part of the res gestae. "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of res gestae." Code § 38-305. *McBride v. State,* 119 Ga. App. 418, 420 (167 SE2d 374) quotes from Green's Georgia Law of Evidence (p. 591, § 293) "that an opinion or conclusion is admissible, if 'spontaneous or reflexive rather than a reasoned one arrived at deliberately after thoughtful consideration.' "

Therefore the trial judge did not err in permitting such testimony as a part of the evidence.

7. Defendants contend the sheriff's testimony should have been excluded upon objection since the sheriff was not sequestered but had remained in the courtroom during the trial and also because his name was not included on the state's list of witnesses furnished to defense counsel.

As to sequestration of a sheriff upon motion, it has been held that this is within the discretion of the presiding judge who may allow him to remain in the court on the basis of his being necessary to the functioning of the court. *Askew v. State,* 3 Ga. App. 79 (59 SE 311); *Childers v. State,* 130 Ga. App. 555 (2) and citations therein.

While we recognize that in this instance defense counsel could not have moved for the sheriff's sequestration in the absence of knowledge that he would be used as a witness, the fact that initially such sequestration is a matter of the court's discretion requires us here to rule that there was no abuse of such

discretion.

As to the other ground of this objection, namely failure to have the sheriff's name reported on the list of state's witnesses supplied upon demand to the accused (Code Ann. § 27-1403) we find this comes within the "harmless error" rule. [E]rror without injury never requires the reversal of a judgment." *Corbin v. State,* 212 Ga. 231, 234 (9) (91 SE2d 764). "Injury as well as error must be shown before a new trial will be granted." *Goodwyne v. State,* 38 Ga. App. 183 (8) (143 SE 443). Although the sheriff's testimony was a vital link in establishment of the chain of custody, the fact is that if his name had been furnished to accused, the information would have been of no benefit with reference to the defense. Inquiry of the sheriff would not have developed any leads towards material that could have been used by defendants at the trial. The burden is upon him who asserts error to show it affirmatively by the record. *Roach v. State,* 221 Ga. 783, 786 (147 SE2d 299). For a case holding harmless error under Code Ann. § 27-1403 see *Spell v. State,* 225 Ga. 705 (171 SE2d 285). See *Hunnicutt v. State,* 130 Ga. App. 630.

8. "The mere recital in the brief of the existence of the assignment of error, without argument or citations of authorities in its support, is insufficient to save it from being treated as abandoned. *Henderson v. Lott,* 163 Ga. 326 (2) (136 SE 403); *J. Kuniansky, Inc. v. Ware,* 192 Ga. 488 (15 SE2d 783); *Head v. Lee,* 203 Ga. 191, 201 (5) (45 SE2d 666)." *Schmid v. State,* 226 Ga. 70, 71 (172 SE2d 616). Accordingly we treat as abandoned defendants' enumeration of error number 5 concerning the refusal to include certain requests to charge as a part of the court's jury instructions.

9. The arrest, search and seizures were made with probable cause and were legally made though without a warrant, with the exception of the search and seizure of the contents of the pockets. The trial court correctly denied the motion to suppress and since the legally admissible evidence supports the verdict, the trial judge correctly denied the motion for directed verdict of acquittal.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

SUBMITTED JANUARY 7, 1974 — DECIDED FEBRUARY 8, 1974.

*Elliott, Turner, Bray & Belk, David J. Turner, Jr., Ben R. Freeman,* for appellants.

*Eldridge W. Fleming, District Attorney, William F. Lee, Jr.,* for appellee.