## 54464. DEPARTMENT OF NATURAL RESOURCES v. JOYNER.

BIRDSONG, Judge.

The State of Georgia, Department of Natural Resources, was sued in the State Court of Glynn County by John William Joyner seeking the return of $2,166.90 deposited with the clerk of the court. The money was realized from the sale of approximately 913 pounds of shrimp confiscated by the conservation ranger of the Department of Natural Resources on May 11, 1975.

The appellant Department charged the appellee Joyner with violation of Code Ann. § 45-905 (Ga. L. 1974, p. 1170). Said Code section makes it unlawful to shrimp in closed waters. Pursuant to Code Ann. § 45-537 (Ga. L. 1956, pp. 590, 599; 1970, p. 466), the shrimp were seized and, because of their perishability, sold and the proceeds deposited with the clerk of court.

The appellee properly filed his claim to the proceeds from the shrimp sold, and the state filed its answer denying that appellee was entitled to the money realized from the sale of the shrimp. The matter was then tried before a jury resulting in a verdict of $2,166.90 for appellee. The State of Georgia, Department of Natural Resources, filed its appeal.

Appellant contends: (a) the State Court of Glynn County committed error when it refused to grant appellant's motion to dismiss on jurisdictional and venue grounds; (b) the trial court erred in its instruction to the jury as to what constituted water closed to commercial shrimping, and in failing to give appellant's request to charge relating to what constituted waters closed to commercial shrimping; (c) the trial court erred in its charge that while plaintiff had the burden of proof, it was presumed that the appellee was innocent of the shrimping within closed waters. *Held:*

1. During the trial of the case, the evidence showed that appellee Joyner contended that, when the game and fish plane flew over his boat, he was in Glynn County, and

that he was boarded by the ranger of the state in McIntosh County. Immediately, the state made a motion to dismiss for lack of jurisdiction and for improper venue. The motion was overruled by the trial court stating "this seizure, this arrest, this condemnation, was commenced in Glynn County, when the man was notified to take his boat to the dock."

In order to understand the ruling of the trial court, we must examine the evidence adduced at trial. Appellee testified that the brother of ranger Fred Todd notified him that a case had been made against him, and to take up and go to the dock. Appellee, because of the roughness of the sea, took up and went in; this he did to cooperate with the rangers and to keep them from coming out in a rough sea in a small boat. This evidence was not rebutted. The question now arises, "Where did the seizure occur, in Glynn County or McIntosh County?" Appellee was notified that a case was made against him in Glynn County; boarding of his vessel was in McIntosh County. The trial judge was correct in his ruling that the seizure took place in Glynn County.

Code Ann. § 27-201 states: "An actual touching with the hand is not essential to constitute a valid arrest. If the defendant voluntarily submits to being considered under arrest, or yields on condition of being allowed his freedom of locomotion, under the discretion of the officer, the arrest is complete." The Supreme Court of Georgia in the case of *Clements v. State,* 226 Ga. 66, 67 (172 SE2d 600) states that the defendant may voluntarily submit to being considered under arrest without any actual touching or show of force, and the arrest is complete. This court in the case of *Caito v. State,* 130 Ga. App. 831, 833 (204 SE2d 765) stated, "An arrest is accomplished whenever the liberty of another to come and go as he pleases is restrained, no matter how slight such restraint may be. The defendant may *voluntarily* submit to being considered under arrest without any actual touching or show of force, and the arrest is complete." (Emphasis supplied.)

There is no evidence to contradict the fact that the appellee was in Glynn County when told that a case was made against him; the fact that he was boarded and the shrimp removed from his vessel in McIntosh County does

not make the seizure in McIntosh County, but to the contrary, the seizure took place at the time appellee considered himself under arrest, i.e., Glynn County. This enumeration of error has no merit.

2. As to enumeration of error designated (b) in this opinion, we find no merit.

The trial court in its charge to the jury gave the following charge as to what constituted waters closed to commercial shrimp, "Now, during the month of May, 1975, the salt waters of this state were closed waters with respect to commercial shrimping with power drawn nets. And during that month, it was illegal for any person to engage in the commercial taking of shrimp with power drawn nets in the tidal or salt waters of this state. And I charge you that the salt waters of this state extended from the mean low water mark of the foreshore three geographical miles offshore or nautical miles." Appellant contends this was error and that the trial court erred in not charging appellant's request to charge, to wit: "I charge you that the general rule is that a person engages in the commercial taking of shrimp with power drawn nets in the tidal or salt waters of this state, if at the time of such taking of shrimp the person's vessel is located at any point within three nautical miles seaward (east) of the low water line along the coast. However, I further charge you that a different rule applies where there is a low tide elevation situated within three nautical miles seaward (east) of the low water line along the coast. In this second case, a person engages in the commercial taking of shrimp with power drawn nets in the tidal or salt waters of this state, if at the time of such taking of shrimp the person's vessel is located at a point within three nautical miles seaward (east) of the low water line of such low tide elevation."

With respect to this contention, we look at a portion of the pertinent statute regarding boundaries of this state. Code Ann. § 15-101, which describes the boundaries of the state, describes the coastal boundaries as follows: "... extending therein three geographical miles from *ordinary low water* along those portions of the coast and coastal islands in direct contact with the open sea or three geographical miles from the line marking the seaward

limit of island waters." (Emphasis supplied.) The charge of the court defined salt water as extending from the mean low water mark of the foreshore three geographical miles offshore or nautical miles.

The Supreme Court of Georgia in *State of Ga. v. Ashmore,* 236 Ga. 401 (224 SE2d 334) holds that the state has fee simple title to the foreshore. (Foreshore has been defined as the strip of land that lies between the high and low water marks that is alternately wet and dry according to the flow of the tide.) In *State v. Bruce,* 231 Ga. 783 (204 SE2d 106), the Supreme Court recognized the fact that the State of Georgia was the owner of the ocean within three geographical miles of the *ordinary low water mark.* (Emphasis supplied.) Appellant's request apparently is based upon the Submerged Lands Act (43 USCA §§ 1301—1315), as well as the Convention on the Territorial Sea and Contiguous Zone. In reading the articles of this convention, it is clear that the normal baseline for measuring the territorial sea is the low water line; however, the convention specifically directs that baselines shall not be drawn to and from low tide elevation unless lighthouses or similar permanently visible installations above sea level shall have been built upon them. No evidence was presented by the state showing a baseline as contemplated by the convention.

It further appears from the evidence that the pilot of the state's plane stated he measured from the high water mark. The jury chose not to believe this testimony.

Absent any evidence to the contrary, the requested charge by the state did not conform to the evidence and, without evidence to support the requested charge, there was no error in refusing said request. The charge as given by the trial judge was couched in legal terminology, was consistent with the evidence, and, therefore, was not error.

3. Enumerated error designated (c) in this opinion complains of the charge that the court stated it was to be presumed that the appellee was innocent of shrimping within closed waters. This case originated as a result of a criminal procedure in which the state charged the appellee with violation of Code Ann. § 45-905 which prohibits commercial shrimping in the closed waters

within the three-mile limit. Reference was made throughout the trial of the case as to the arrest of the appellee. Without this charge, the jury could have possibly misunderstood and not realized this case was a civil case and not a criminal case; furthermore, the trial judge in his charge fully stated to the jury that this presumption could be rebutted and that they were to take the evidence and decide from the evidence as to whether or not this presumption had been rebutted. The law presumes that every man obeys the mandates of the law until the contrary appears. *Beavers v. Le Sueur,* 188 Ga. 393, 403 (3) (3 SE2d 667); *Suddath v. Blanchard,* 39 Ga. App. 262 (2) (146 SE 798); *Beadles v. Bowen,* 106 Ga. App. 34, 36 (126 SE2d 254). There was no error in this charge.

*Judgment affirmed. Deen, P. J., and Webb, J., concur.*

ARGUED SEPTEMBER 7, 1977 — DECIDED OCTOBER 5, 1977 — REHEARING DENIED NOVEMBER 15, 1977 —

*Arthur K. Bolton, Attorney General, Robert S. Bomar, Senior Assistant Attorney General, Robert E. Hall, Special Assistant Attorney General,* for appellant.

*Hutto, Palmatary, Boshears & Magda, Jack S. Hutto,* for appellee.