## 63889. STEWART v. THE STATE.

POPE, Judge.

Wendell Stewart was indicted on a charge of involuntary manslaughter for the death of Richard Wayne Crisp.[1] Defendant was accused of unintentionally causing Crisp's death by committing an unlawful act (simple battery) upon him, a felony. Following a trial by jury, defendant was found guilty of involuntary manslaughter by committing a lawful act in an unlawful manner, a misdemeanor.

The evidence of record shows that Crisp's body was discovered floating face down in the Casey Canel near the intersection of 56th Street in Chatham County. The deceased was approximately eight feet from the shore; his knees were on the bottom of the canal and he was floating from the waist up. The cause of death was respiratory failure, the morphological evidence of which was pulmonary edema, i.e., fluid in the lungs. The pathologist listed five possible scenarios:

---

[1] Defendant was also charged with robbery by use of force; however, the trial court granted his motion for directed verdict of acquittal on this charge following the close of the state's evidence.

(1) accident, (2) the toxic effect of methaqualone and alcohol, (3) drowning, (4) a combination of drug overdose and drowning, and (5) physical trauma which, although not causative, could have led to the ultimate cause of death. Crisp's blood contained measurable levels of both methaqualone (0.96 percent) and alcohol (0.07 percent). The therapeutic level of methaqualone is generally considered to be 0.50 percent, a lethal level 2.0 percent. The effects of a 0.07 percent blood alcohol level "are more mental than physical . . . [affecting] things such as the judgment, attention span, inhibition, thinking process, just the higher functions of the mind." Alcohol and methaqualone act synergistically so that the effect of both combined is greater than either one taken separately. There were three short lacerations above his left eye, said injuries having occurred before death. A medical expert testified that in his opinion these injuries did not occur as the result of his falling in the canal, hitting his head, becoming unconscious and drowning.

Defendant gave a statement to the police in which he admitted having known Crisp for about seven months. They had met through Tina Rowland, to whom defendant had been engaged. He considered Crisp a close friend. On the night of his death Crisp had walked to defendant's house and engaged in conversation. He was drinking liquor and taking pills (methaqualone). After a couple of hours defendant began escorting Crisp back to his house. They walked past the canal, where Crisp stopped to urinate. The statement concludes: "From there he fell into the canal. That is when I just got fed up with it, him being drunk and all. I went home and went jogging. I didn't know Rick was dead. I told him that that would sober your ass up, after he fell in the canal."

Crisp's roommate, Robert Edenfield, testified that defendant and Crisp had argued over a woman (Tina Rowland) about a month prior to Crisp's death. On the night following the death defendant met Edenfield at a bar and told him of the death. Edenfield called Crisp's sister, Lynette Devegter, who verified the death. During this conversation Devegter stated that Crisp's face was all bloody when they pulled him from the canal. When he repeated this to defendant, defendant stated, "No, his face wasn't bloody when I seen him." Defendant purportedly knew for at least six months that Tina Rowland and Crisp were having sexual relations. Thus, when defendant stated that he had really liked Crisp, Edenfield believed this to be inconsistent with his knowledge of their relationship. Edenfield and defendant went for a drive and ended up at Devegter's house. Defendant was not aware of the destination and was very nervous and upset to meet Devegter, Crisp's sister. While at her house, defendant related a story different from his statement to the

police. He said that Crisp had become obnoxious and had awakened his parents; that he had walked Crisp to a pay telephone a few blocks away and had left him; that a short time later he had seen the police pull Crisp's body out the canal. Defendant also said that he might be locked up for Crisp's death because he had been the last person to see him alive.

On the day following Crisp's death, defendant asked Billy Knipfer to help him find his car keys. They searched along the way from defendant's house to the canal. Defendant was also anxious to dispose of some clothes which had gotten wet the previous night. Defendant told Knipfer that some guy he had been with had fallen into the canal and that he had pulled him out. He then had slapped this guy a couple of times, saying this will sober you up, and had left.

Finally, Devegter's roommate, Donna Smith, testified that someone who sounded like defendant telephoned on the Saturday preceding the trial and warned that Devegter had better not show up "on Thursday," the day of the trial.

1. Defendant's first three enumerations of error challenge the sufficiency of the evidence to support the verdict. The thrust of these enumerations is that the evidence in this case was entirely circumstantial and did not exclude every other reasonable hypothesis save that of defendant's guilt. See Code Ann. § 38-109. "In this connection we point out the rule that where the defendant makes incriminatory statements after the [victim's death], the case is not one depending entirely upon circumstantial evidence." *Northcutt v. State,* 228 Ga. 653 (187 SE2d 260) (1972); *Henderson v. State,* 210 Ga. 680 (1) (82 SE2d 638) (1954).

Although he was indicted for felony involuntary manslaughter, defendant was convicted of misdemeanor involuntary manslaughter — unintentionally causing the death of another by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm. See Code Ann. § 26-1103 (b). From the facts and circumstances in this case the jury was authorized to conclude that the defendant knew the deceased was intoxicated with drugs and alcohol and slapped him in an effort to sober him. The tide in the canal rises and falls, and if defendant, after attempting to sober the deceased, let him fall to the ground in a spot which would soon be covered with water, or indeed let him fall into the water, the jury was authorized to conclude that defendant was guilty of manslaughter by committing a lawful act (attempting to sober the deceased) in an unlawful manner. The jury was authorized to find that defendant's actions at the canal on the night of Crisp's death amounted to " . . . such gross negligence and heedless indifference to the rights and safety of the victim that an injury to the victim was reasonably

foreseeable. [Cit.] Nor can we say that the jury was not authorized to conclude that this gross negligence was the proximate cause of the victim's death." *Maloof v. State,* 145 Ga. App. 408, 409 (243 SE2d 634) (1978). Viewed in a light most favorable to the state, any rational trier of fact could have found defendant guilty of involuntary manslaughter, a misdemeanor, beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Ward v. State,* 238 Ga. 367, 369 (233 SE2d 175) (1977); *Heath v. State,* 77 Ga. App. 127 (47 SE2d 906) (1948).

2. Defendant contends that the trial court erred in permitting Donna Smith to testify and cites several reasons therefor, including that her name did not appear on the state's list of witnesses. The assistant district attorney stated in his place that the evidence sought to be presented via Ms. Smith was newly discovered; defendant did not challenge this claim. Moreover, defendant was given an opportunity to interview the witness in lieu of a continuance. Therefore, this contention has no merit. *Smith v. State,* 142 Ga. App. 1 (5) (234 SE2d 816) (1977); see *Lakes v. State,* 244 Ga. 217 (259 SE2d 469) (1979). As no further objections to Ms. Smith's testimony appear in the record, defendant's remaining contentions relating thereto present nothing for decision on appeal. *Bell v. State,* 144 Ga. App. 692 (1) (242 SE2d 345) (1978).

3. In light of our discussion in Division 1 of this opinion, the trial court did not err in charging Code Ann. § 26-1103 (b). See *Johnson v. State,* 130 Ga. App. 704 (9) (204 SE2d 302) (1974). Nor was the court's charge on causation erroneous for any reason assigned.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 8, 1982 —
REHEARING DENIED OCTOBER 5, 1982 —

*William O. Cox,* for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney,* for appellee.