## 67029. KERRETHERS v. THE STATE.

CARLEY, Judge.

Appellant appeals his convictions of voluntary manslaughter and recidivism.

Although the evidence presented at appellant's trial was conflicting, the trior of fact was authorized to find the following: Appellant, the victim, and others were at the home of Curtis Johnson. Most of the people there, including appellant and the victim, were drinking, and the victim was extremely intoxicated. A verbal altercation ensued, although it is unclear exactly who was involved. According to appellant, Johnson threatened him with a knife, and the victim threatened to beat him. Appellant was told to leave Johnson's

home. He walked to his own home, where he obtained a butcher knife. Concealing the knife either in his pants or behind his back, appellant returned to the area of Johnson's home and engaged in a confrontation with the victim. It is not certain whether the victim, who was unarmed, first advanced upon appellant, or whether appellant was the aggressor. In any event, appellant stabbed the victim once in the heart and the victim retreated. He subsequently died from loss of blood. Appellant ran away from the scene, and the police were summoned. The police located appellant, who was hiding behind the screen door of an apartment building. They drew their weapons and instructed appellant to come out with his hands up. As appellant did so, he said to the police, "I didn't mean to kill him. I didn't mean to kill him." The police immediately warned appellant not to say anything else. Appellant was then handcuffed, and his Miranda rights were read to him. Appellant stated that he understood those rights and that he wanted a lawyer. When appellant thus invoked his rights, the arresting officers asked him no further questions.

Officer Ramsey, who had not participated in the arrest, transported appellant to the police station. Officer Ramsey had been told that appellant had been advised of his rights, and she asked him no questions. While in the police car, however, appellant made several spontaneous statements, apparently talking to himself. Officer Ramsey told appellant that he needed a lawyer and that he should not be talking. Nonetheless, appellant continued to mumble incriminating remarks: "I didn't mean to kill Mo. I didn't mean it." "Everybody else can mess with Mo and beat his ass. I stabbed him one time and he died." "Why did it have to happen? Why did he get in front of me?"

At the police station, appellant was again advised of his Miranda rights. He again stated that he understood them, and he asked for a lawyer and for his father. He was not interrogated, nor was he encouraged to make any statements whatsoever. However, he continued to state that he did not mean to kill Mo. He told the police that he and Mo were good friends and drinking buddies. He also said that Mo was not even involved in the fight, and that Mo had swung at him and missed before he "stuck" Mo. He further stated that, after the incident, he threw the knife away in the woods.

When appellant made these remarks, the police reminded him that he had invoked his right to remain silent, and asked whether he had changed his mind and would like to make a statement. Appellant replied in the negative and restated his desire for a lawyer. However, appellant made no attempt to procure an attorney at that time, nor did he ask to use the telephone, which was reasonably available.

A pre-trial Jackson v. Denno hearing was held to determine the admissibility of appellant's statements. After hearing evidence, the trial court determined that the requirements of Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and its progeny did not apply to the voluntary statements made by appellant simultaneously with his arrest. The trial court further found that appellant's custodial statements made after his being advised of his Miranda rights were "freely and voluntarily made without the slightest hope of benefit or the remotest fear of injury."

At his trial for murder, appellant's statements were admitted into evidence over objection. Appellant admitted stabbing Mo and attempted to establish that he did so in self-defense. The jury found appellant guilty of voluntary manslaughter.

1. Appellant asserts that the trial court erred in admitting evidence of appellant's incriminating statements.

Appellant's spontaneous remark, "I didn't mean to kill him," made as soon as he was apprehended by police, clearly was admissible. *Caito v. State,* 130 Ga. App. 831 (6) (204 SE2d 765) (1974). The other incriminating statements were made after appellant had been advised of and had invoked his right to counsel. Under Edwards v. Arizona, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), and Oregon v. Bradshaw, —— U. S. —— (103 SC 2830, 77 LE2d 405) (1983), such statements were not admissible unless they were made after the accused himself had initiated communication with the police, and unless there had been a voluntary, knowing, and intelligent waiver or relinquishment of the right to silence and the right to counsel. Whether there was such a valid waiver depends on the totality of circumstances of the particular case, including the background, experience, and conduct of the accused.

In the instant case, there is nothing in the record to suggest that appellant was mentally incapacitated or had any special susceptibilities. Although appellant had been drinking, he was not intoxicated. Additionally, appellant had been convicted of crimes on several previous occasions and thus had experience in dealing with law enforcement officials.

It is clear that appellant initiated his communication with the police. The incriminating statements in issue were spontaneous, unsolicited utterances on the part of appellant, and no dialogue with police was involved. See *Allums v. State,* 161 Ga. App. 842 (5) (288 SE2d 783) (1982). None of appellant's statements was "made in response to questioning, under duress or threat, or as a result of inducement. A statement is not 'elicited' merely because it is uttered by an accused in custody who has yet to consult with counsel . . . There

is nothing in the record of this case to indicate that the police attempted to interrogate [appellant] in violation of his Miranda rights." *Williams v. State,* 249 Ga. 839, 842 (295 SE2d 74) (1982).

It is also clear that appellant was cognizant of this right to counsel and his right to remain silent, having previously invoked the same and having been reminded several times of his election not to speak without the presence of counsel. "However, the subsequent words and actions of appellant clearly implied a knowing and intelligent, relinquishment of these rights. [Cits.] In short, the evidence adequately supports a Jackson-Denno finding that appellant, in fact, knowingly, intelligently, and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel." *Golden v. State,* 163 Ga. App. 629, 631 (295 SE2d 144) (1982). Accordingly, we find no error.

2. Appellant also asserts that the trial court erred in refusing to admit into evidence certain testimony concerning appellant's state of mind immediately prior to the stabbing incident. The excluded testimony was that of a witness who spoke with appellant when appellant went home and procured the butcher knife. The witness would have testified that appellant told him that Johnson had threatened appellant with a knife. The trial court ruled that such testimony was inadmissible hearsay.

Appellant contends that the proffered testimony was not hearsay because it was offered not to prove the truth of the matter asserted, but to show appellant's self-defensive frame of mind. Appellee, on the other hand, argues that the proffered testimony was offered for its truth, its purpose being to bolster or illustrate appellant's theory of self-defense.

"[Appellant] insists that this testimony was relevant to his motive and intent and that the court's failure to [admit the testimony] constituted error. He argues that the testimony would have been relevant and material and that it would have been admissible to explain conduct under the exception to the hearsay rule found in [OCGA § 24-3-2 (Code Ann. § 38-302)]. Since the proffer of testimony . . . indicated that the statements sought to be admitted . . . were self-serving, [OCGA § 24-3-2 (Code Ann. § 38-302)] does not apply. [Cits.]" *Arp v. State,* 249 Ga. 403, 404 (291 SE2d 495) (1982). "Self-serving declarations made by a defendant are not admissible to explain his conduct. [Cits.]" *Dickey v. State,* 240 Ga. 634, 641 (242 SE2d 55) (1978). See also *Smith v. State,* 144 Ga. App. 294 (241 SE2d 14) (1977). The trial court did not err in excluding the proffered testimony.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED FEBRUARY 15, 1984.

*Theresa M. Clyne, Jack H. Affleck, Jr.,* for appellant.
*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney,* for appellee.