A91A2108. PHIPPS v. THE STATE.
(416 SE2d 319)

BEASLEY, Judge.

Phipps appeals his convictions of involuntary manslaughter, OCGA § 16-5-3 (a), and cruelty to children, OCGA § 16-5-70 (b).

The victim, Brian Anthony Williamson, was approximately 22 months old at the time of his death. His mother, Robin Williamson, met appellant in October of 1986, and on January 11, 1987, she and her children moved into his trailer. Robin testified that appellant had told her that infants should be disciplined by spanking their bare buttocks, and on January 14, appellant beat Brian's buttocks with a belt. He felt badly about it later and said he would not do it anymore.

On January 16, Robin and the children were at Robin's mother's house. Brian was crying and irritable but he was in good physical condition. Appellant arrived at 3:00 p.m. and left with Brian at 3:30 to take Brian to his trailer for a nap. At 4:00 p.m., appellant called Robin and told her he had whipped Brian but otherwise the child was fine. Appellant called Robin later that afternoon and said the child had fallen out of the truck and passed out, and he was with the child at a fire station.

One witness testified that at approximately 3:45 to 4:00 p.m. that afternoon he saw appellant beating Brian while appellant was driving his pickup truck. Another witness testified he saw appellant and Brian during this time period, and the child appeared to be in good physical condition.

Appellant appeared with Brian at the fire station at 5:30 p.m. It was an extremely cold, rainy day, and Brian wore only diapers. He was suffering from hypothermia. Both appellant and Brian had an odor of alcohol about them. Blood was coming out of Brian's mouth, and his vital signs were imperceptible. Appellant, who appeared unconcerned, stated that the child had fallen out of a door. CPR was administered. The taste of alcohol was on the child's lips.

At that time, the child had abrasions and bruises to his face, forehead, and eyelids; bruising and bleeding under the skin of both

outer ears; bruises on his chest; bruises to the abdomen in the shape of a handprint; bruises to his back, including several that were loop-shaped; bruises on his buttocks; lacerations to his lips; bent and missing teeth; and lacerations and bruising to his head behind his ear. The injuries appeared to have been inflicted at different times.

Due to the severity of the child's injuries, he was transferred from the fire station to Humana Hospital at 5:45 p.m., and from there to the Medical College of Georgia Hospital. Child abuse was suspected by the personnel at these facilities, and the police were summoned. When Brian arrived at Humana, he did not have spontaneous respiration, his heart rate was slow, there was no blood pressure, and his body temperature was 90 degrees. When he arrived at Medical College of Georgia, he was in a deep coma and there was no evidence of neurologic function. He was given blood pressure medication and was breathing with the assistance of an ambu-bag.

Attending physicians testified that his critical condition was caused by internal abdominal injuries and extensive injuries to the head and brain, resulting in a loss of blood which in turn caused the respiratory and heart problems. The physicians treating Brian and pathologists, including the one performing the postmortem examination and autopsy, testified that Brian had suffered subdural and subarachnoid hemorrhages and brain edema as a result of blunt force trauma to the head, thereby resulting in the child's death on January 17.

Consistent with his trial testimony, appellant initially stated to the police that after he arrived at his trailer, he put Brian on the ground so that he could walk to the door. In nudging Brian onward, he pushed him too hard and Brian fell and began bleeding a good bit. Appellant took him into the trailer and cleaned him up. Subsequently, appellant heard dogs barking and opened the front door to let his Doberman Pinscher out. In the meantime, Brian had positioned himself in front of the door, and the dog knocked him down a set of steps which were no more than two-and-one-half feet above ground. Appellant went to the aid of Brian, but he was unconscious and could not be revived, so he took Brian to the fire station. The police went to appellant's trailer after he gave this statement. His dog was tied to a table rather than running loose on the outside, as appellant had stated.

After giving this version of events to police, appellant made a statement admitting that he had abused Brian. He stated that Brian "headed for the front door and fell down a couple of times, and I pushed him a couple of times, and that's how he hurt his face. And when we went to, he did fall out the front door and fall onto the bottom steps, that's how he hurt his face, also, that, that helped it." Appellant also admitted that he "popped" Brian on his chest causing

bruises and that he had caused "the print on his stomach."

1. Appellant contends that the trial court erred in refusing to grant a directed verdict of acquittal on the homicide charge. Appellant bases this contention on the fact that the medical experts could not positively state that the child's fatal head injuries were caused by intentional conduct rather than an accidental fall while the child was under appellant's care and custody. Also, there was evidence that on prior occasions Brian had been physically abused by Robin and her mother.

On this basis, appellant argues that his conviction cannot stand under OCGA § 24-4-6, since it is wholly dependent on circumstantial evidence and the facts do not exclude every reasonable hypothesis save that of guilt. To the contrary, the conviction, as opposed to an element of the crime, is not wholly dependent on circumstantial evidence. " '[W]here the defendant makes incriminatory statements after the (victim's death), the case is not one depending entirely upon circumstantial evidence.' [Cits.]" *Stewart v. State*, 163 Ga. App. 735, 737 (1) (295 SE2d 112) (1982); also see *Yarborough v. State*, 183 Ga. App. 198 (1) (358 SE2d 484) (1987).

Comparing the child's condition at the time appellant took him from his mother and shortly thereafter, with his condition at the time he and appellant appeared at the fire station, and considering the acts of abuse admitted by appellant, the evidence, when viewed most favorably to the verdict, was sufficient to have authorized a rational trier of fact in finding beyond a reasonable doubt that appellant caused the child's death. *Adams v. State*, 255 Ga. 356, 357 (1) (338 SE2d 860) (1986). There was evidence that the commission of unlawful acts was "the cause in fact of the victim's death." *Gulf Oil Corp. v. Stanfield*, 213 Ga. 436, 438 (99 SE2d 209) (1957) (cited in *Burns v. State*, 240 Ga. 827, 828 (1-2) (242 SE2d 579) (1978)). "The weight of the evidence and credibility of the witness[es, including defendant] are for the jury's determination. [Cit.]" *Armour v. State*, 154 Ga. App. 740 (270 SE2d 22) (1980).

2. Appellant next contends that the trial court erred in excluding the testimony of a witness that on Monday, January 12, five days before the incident on trial, appellant had stated to her and her husband "that this little boy, Brian, had bruises all over his buttocks and up his back, and he did not know what to do about it. And me and my husband told him that he needed to talk to someone about it." The witness and her husband were permitted to testify that he then appeared concerned about the little boy.

Appellant argued at trial that this hearsay testimony showed that his state of mind regarding the child was one of caring and concern. The court rejected this testimony under the " 'well-settled principle of law that self-serving declarations, when made by the accused either

before or after the time of the commission of the alleged offense, are not admissible.' [Cits.]" *Smith v. State*, 144 Ga. App. 294 (241 SE2d 14) (1977). Appellant also argued for admission under OCGA § 24-3-2, not as hearsay, but as original evidence explaining his conduct and showing his state of mind.

Since appellant sought to admit the testimony in order to prove the truth of the matters asserted therein rather than the fact that he made such statements, it was inadmissible hearsay under the line of cases exemplified by *Smith*. See *Kerrethers v. State*, 169 Ga. App. 832, 835 (2) (315 SE2d 46) (1984); see generally *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982).

Appellant also argues that the exclusion pursuant to a per se exclusionary rule violated his constitutional right to present exculpatory evidence. However, his failure to raise below this argument, or the argument that the testimony was admissible as the res gestae, precludes their consideration. See *Galfas v. Ailor*, 206 Ga. 76 (1) (55 SE2d 582) (1949); *Price v. State*, 202 Ga. 205 (1) (42 SE2d 728) (1947). The court gave express opportunity to raise all grounds.

*Judgment affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED FEBRUARY 10, 1992 —
RECONSIDERATION DENIED MARCH 2, 1992 —

*Fleming, Blanchard & Bonner, John Fleming, Danny L. Durham, Charles R. Sheppard*, for appellant.
*Michael C. Eubanks, District Attorney, Richard E. Thomas, Assistant District Attorney*, for appellee.