31624. BURGER v. THE STATE.

HALL, Justice.

Burger surprised his wife in a compromising setting with another man, and shot them both to death on the spot. The state's evidence indicated he had been following her and spying upon her for some time, in the belief that if he found her with another man he would be privileged to do them harm. He has now been convicted of both murders, and brings this appeal.

1. The most significant issue before us is his claim that when a man discovers his wife in an adulterous act or overtures thereto, he is justified in killing both his wife and the lover, or alternatively that such killings cannot rise above voluntary manslaughter.

Such a rule of law would be utterly barbarous, and we wholly reject it. Moreover, so much of our state's current decisional law as allows a spouse to kill the illicit lover, we also reject.

Burger received at his trial the benefit of instructions allowing the jury to find the killing of the lover but not of the wife to be justifiable homicide to prevent adultery. See *Henderson v. State,* 136 Ga. App. 490 (221 SE2d 633) (1975); *Campbell v. State,* 204 Ga. 399, 403 (49 SE2d 867) (1948); *Daniels v. State,* 162 Ga. 366 (133 SE 866) (1926). What he argues here is that his license to kill should have been even broader.

Recently, the Court of Appeals in *Henderson v. State,* supra, set out candidly the law of this state, namely, that killing the lover to prevent adultery could be justifiable homicide to protect the marriage, though killing the spouse could not be justified because that would terminate the marriage. That has indeed been the law, but it exalts the empty form of marriage — the vows of which are in the act of being repudiated by one party — above human life itself. Moreover, there is no statute compelling this absurd and dangerous situation — the

so-called "unwritten law" has been created by judges.

In this day of no-fault, on-demand divorce (*Manning v. Manning,* 237 Ga. 746 (229 SE2d 611) (1976)) when adultery is merely a misdemeanor (Code Ann. § 26-2009), and when there is a debate raging in the country about whether capital punishment even for the most heinous crimes is proper, any idea that a spouse is ever justified in taking the life of another — adulterous spouse *or* illicit lover — to prevent adultery is uncivilized. This is murder; and henceforth, nothing more appearing, an instruction on justifiable homicide may not be given. Such homicides will stand on the same footing as any other homicides. Our ruling should not, however, be read to mean that the peculiar facts of a given case may never suggest "passion" and "provocation" within the meaning of the voluntary manslaughter statute.

2. The remaining claims of error, as numbered below, need not long detain us.

The verdict was amply supported by the evidence.

Burger argues that the testimony of Reverend Spurling, a witness for the state, was incompetent under Code Ann. § 38-419.1 even though not objected to. Our review of the record shows that the statements by Burger to which Spurling testified were not made by Burger in "professing religious faith, or seeking spiritual comfort" or "guidance," but were conversational statements to Spurling, who was his friend and frequent companion, of his intent to kill his wife and her lover. The ministerial privilege was not applicable.

Burger's arguments that the court's numerous charges on voluntary manslaughter were erroneous are without merit. The state's evidence showed premeditated murder, and the only defense was insanity (and a claim of justifiable homicide). Burger at no time denied the killings; his testimony was that when he found them together his mind went blank and he remembered nothing until after the shootings. This is not evidence of "passion," see Code Ann. § 26-1102, and voluntary manslaughter is not applicable to these facts and need not have been charged. E.g., *Reeves v. State,* 234 Ga. 896 (218 SE2d 625) (1975); *Battle v. State,* 233 Ga. 59 (209 SE2d 630) (1974). Where he was not entitled to a charge on

voluntary manslaughter, he cannot have been harmed by the giving of the instruction even though a portion of it contained an alleged burden-shifting implication. *Grier v. State,* 212 Ga. 248, 255 (91 SE2d 749) (1956); *Bird v. State,* 55 Ga. 318 (1875); see *Chambers v. State,* 134 Ga. App. 53, 56 (213 SE2d 158) (1975).

A charge that malice is presumed from an intentional killing and that it rests with defendant to show justification or excuse unless they appear from the state's evidence, is not an unconstitutionally burden-shifting charge. *Davis v. State,* 237 Ga. 279, 280 (227 SE2d 249) (1976); *Jones v. State,* 234 Ga. 108, 111 (214 SE2d 544) (1975); *Abner v. State,* 233 Ga. 922 (213 SE2d 851) (1975). The argument that this charge is confusing when considered with other charges is without merit.

3. The first section of this opinion shows that the remaining enumerations of error dealing mostly with refusals to charge are without merit.

*Judgment affirmed. All the Justices concur in Divisions 1 and 3, except Nichols, C. J., Jordan and Ingram, JJ., who would uphold the former case law on justifiable homicide to prevent adultery. All the Justices concur in Division 2 and the judgment, except Gunter, J., who dissents.*

ARGUED OCTOBER 12, 1976 — DECIDED JANUARY 6, 1977.

*Spence & Milam, Bobby C. Milam,* for appellant.
*C. B. Holcomb, District Attorney, Frank C. Mills, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Staff Assistant Attorney General,* for appellee.