## 38518. WILLIAMS v. THE STATE.

SMITH, Justice.

Richard Williams shot and killed Mack Newberry on the evening of March 1, 1980. Williams was indicted for murder and tried before a jury in Gordon County Superior Court. Williams was found guilty and sentenced to life imprisonment on July 11, 1980. This case

comes to us on direct appeal from the Superior Court. We affirm.

Richard Williams, appellant, age fifteen, attended an informal evening gathering of friends at the home of a neighbor, the Postell family. Appellant lived nearby with his mother. Williams was among those at the party who were drinking, dancing, and listening to the radio. At some undetermined point during the evening Ed Postell and his son Richard Postell got into a fight. Appellant tried to break up the argument and was struck a blow by Ed Postell in the process. In response, Williams soon left the Postell house, declaring that he was going to get his gun. Mary Ann Lyles, a fourteen-year-old girl present at the party, accompanied Williams from the party and to his house. Mack Newberry, appellant's common-law stepfather, and Shirley Williams, appellant's mother, were inside the house when appellant appeared, went to his room for a rifle, and rushed out the door. Newberry questioned Williams about his purpose for securing the gun and sought to stop him, but Williams did not respond. As Newberry stood in the doorway of the house yelling at Williams to return with the gun, appellant shot and killed him from the driveway, about eighteen feet distant. Williams then walked on down the driveway with Lyles. He never returned to the Postell's, but he did wander among several other houses along the street, still accompanied by Lyles, before he was arrested a few minutes after ten o'clock in the evening at a home in the same subdivision.

Upon his arrest Williams immediately received the Miranda warnings and was placed in a sheriff's car. The sheriff testified that Williams acknowledged that he understood his right to remain silent and to have an attorney appointed if he could not afford one. Williams then requested counsel. Appellant was never questioned or interrogated while in the patrol car, but he did volunteer incriminating statements to the arresting officers during his transport back to the scene of the shooting and again later during his trip to the hospital for blood tests. Neither of these statements were in response to nor induced by police questioning or comments.

(1) In his first enumeration appellant cites as error the trial court's denial of his motion for new trial as amended, including the general grounds as alleged in the original motion for new trial. We find that the evidence was sufficient to support the verdict in light of Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and accordingly, this enumeration of error is without merit.

(2) The appellant contends that the trial court erred in effectively denying appellant his right to have the jury polled, and that lack of a timely jury poll is reversible error. We agree that a defendant must have an opportunity to timely demand a poll of the

jury. *McCullough v. State,* 10 Ga. App. 403 (73 SE 546) (1911). But we do not find that in the present case the defendant was denied his opportunity to have the jury polled. The record does not reflect an attempt by defense counsel to request a jury poll after publication of the verdict. The record shows that defendant's counsel at trial requested a poll at the conclusion of remarks from the court explaining the likely sentence of the appellant. The jury was thereupon returned to the box and polled individually. There is nothing in the record that indicates that the court rushed to make a statement to the jurors in order to preempt counsel's demand. We find this enumeration of error to be without merit.

(3) In his third enumeration appellant charges that the court erred in denying defendant's motion for a mistrial when the defendant appeared in court in the presence of the jury handcuffed and with excessive guards. We find no reason to reach the merits of this enumeration. The record shows that although a sheriff's deputy may on one occasion have been in the process of handcuffing the defendant before the jury had filed out of the courtroom, he stopped at the request of defendant's counsel and defendant left the room without handcuffs. Neither the court nor the District Attorney observed the guard's actions and both were present in the courtroom and in a position to see the defendant. The record also shows that the jury's view was blocked by defendant's counsel who told the court that he stood between defendant and the jury at the time of the incident. We are unable to find any evidence in the record of guards other than the one involved with the handcuffs. There is no evidence that appellant ever appeared in the presence of the jury in handcuffs or accompanied by "excessive guards." Accordingly, we find this enumeration of error to be without merit.

(4) Appellant contends that the trial court erroneously admitted two out-of-court statements he made to the police shortly after his arrest and while in detention in the back seat of a police car. Subsequent to his arrest, appellant was properly advised of his rights and asked if he desired an attorney, according to Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). At that time he requested a lawyer and no further questions were asked of him. Williams was then driven back to the house where he had shot Newberry. While he waited there for police to take him away, Williams made his first statement. He said he "was going to kill Ed Postell for killing Richard Postell, but he had used his last bullet on that bald-headed son-of-a-bitch." The second statement came while the sheriff drove Williams to the hospital for a blood alcohol examination. During the trip appellant stated, "I should have killed them all."

Appellant argues that certain conduct on behalf of the sheriff amounted to interrogation in violation of the Miranda standards and was done with the specific intent to obtain incriminating statements from Williams. It is argued that by taking the appellant immediately after his arrest back to the location where the killing occurred while he was still intoxicated and disoriented amounted to conduct that the sheriff should have known would prompt Williams to talk and incriminate himself. We find this reasoning to be unpersuasive and without merit in law or fact. There is nothing in the record to suggest that the sheriff should have known that his action was reasonably likely to elicit an incriminating response from Williams. It cannot be fairly concluded that Williams was subjected to questioning or its functional equivalent in derogation of his right to remain silent, Rhode Island v. Innis, 446 U. S. 291 (100 SC 1682, 64 LE2d 297) (1980).

Appellant further contends that the statement uttered on the way to the hospital was "elicited," because Williams had not yet spoken to counsel. Again, we find no merit to this claim in law or fact. We find both statements to have been properly admitted into evidence. Both were clearly voluntary and such statements are not barred by the holding in Miranda. The record establishes that neither statement was made in response to questioning, under duress or threat, or as a result of inducement. A statement is not "elicited" merely because it is uttered by an accused in custody who has yet to consult with counsel. "A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Emphasis supplied.) Rhode Island v. Innis, supra at 301-302. There is nothing in the record of this case to indicate that the police attempted to interrogate Williams in violation of his Miranda rights.

(5) In his fifth enumeration of error appellant contends that it was error to refuse his request to charge the jury that the state had to prove, by a preponderance of the evidence, the defendant's sanity. In this enumeration appellant asks this court to overrule its prior decisions holding that a criminal defendant must prove his insanity by a preponderance of the evidence. Nothing in this case or the argument of appellant persuades the court to overturn an established rule of law in this state. In Georgia it remains the rule that an accused who asserts insanity as a defense has the burden of proving his insanity by a preponderance of the evidence. Grace v. Hopper, 566

F2d 507 (5th Cir.) (1978) (cert. den. 99 SC 139) (1978); *Boswell v. State,* 243 Ga. 732 (256 SE2d 470) (1979).

(6) In his final enumeration appellant alleges error in the trial court's failure to instruct the jury on delusional compulsion. We have held that in order for delusional compulsion to arise there must be evidence that the defendant was laboring under a delusion, that the act itself was connected with a delusion and furthermore that the delusion would, if true, justify the act. *Moses v. State,* 245 Ga. 180 (3) (263 SE2d 916) (1980); *Graham v. State,* 236 Ga. 378 (223 SE2d 803) (1976).

None of the witnesses to the shooting or to Williams' behavior immediately before and afterward testified to any delusional behavior on his part. Evidence of appellant's mental state was offered by a psychologist who had examined Williams approximately three weeks after the shooting. He found Williams at that time to be suspicious, withdrawn, somewhat sullen, quick to react, and very impulsive. He could not say whether Williams had been delusional at the time of the murder. The psychologist was able to testify that in his opinion Williams knew it was wrong to shoot Newberry.

We conclude that there was no evidence Williams was laboring under a delusion connected in any way with the shooting. There is insufficient evidence to support a charge on delusional compulsion; therefore, the trial court did not err in declining to charge the jury.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 23, 1982.

*Michael R. Eddings,* for appellant.

*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney, Michael J. Bowers, Attorney General, George M. Weaver, Assistant Attorney General,* for appellee.