## 39191. GRAHAM v. THE STATE.

WELTNER, Justice.

Harold Graham shot and killed Roy Cantrell with a 12 gauge shotgun. Graham appeals his conviction of murder and sentence to life imprisonment.

At the time of the killing, Graham was a friend and frequent companion to Teressa Cantrell, who formerly had been married to the victim. The Cantrells had one daughter, Michelle, who was living with the victim. Mrs. Cantrell has another daughter, Jenny, by an earlier marriage, who resided with her mother.

On the afternoon of January 1, 1981, the victim brought Michelle to Mrs. Cantrell's house for an overnight visit. Mrs. Cantrell and Jenny were there. The victim remained at the house for 20 to 30 minutes and then left. A few minutes later Graham drove up. There was evidence that he was intoxicated at the time. He entered the house and began arguing with Mrs. Cantrell. At this point Michelle went to get Mrs. Cantrell's brother, Craig Reese, who lived a short distance away on the other side of the street. Reese came over to the house, and, finding that the altercation had subsided, departed. Subsequently Michelle went back to Reese's house, called her father (the victim), apparently reported the argument, and asked her father to come and get her. She then returned to her mother's house and stated that Cantrell was on his way over. Graham obtained a shotgun from the bedroom and placed it in the kitchen near the back door.

At this point the evidence falls into conflict.

According to Mrs. Cantrell, she attempted to take the two girls away in her car, but Graham threatened to kill them if they tried to

leave the house. A few minutes later, Cantrell drove up and parked in the driveway, and Michelle and Jenny ran out the door to meet him, followed by Graham and Mrs. Cantrell. Michelle got into Cantrell's car. As Cantrell attempted to get Jenny into the car, Graham emerged with the shotgun, pointing it at the car and threatening to kill Cantrell, who was not then armed. Mrs. Cantrell pushed the shotgun away, and it discharged. Graham aimed the gun again, still threatening to kill Cantrell; again Mrs. Cantrell pushed it away and it discharged. Jenny ran away after the second shot. Graham then ran up to Cantrell, who was standing beside his car, held the gun to his chest and said, "Damn you. I'm going to kill you." Cantrell replied that he only was trying to remove the children, and Graham told him, "I'll give you five goddamn minutes to get them and get gone." As Graham began to step backwards, Cantrell apparently obtained a pistol from his car. As each man stood with his weapon aimed at the other, both guns fired. Cantrell fell down, still firing his handgun. Mrs. Cantrell then observed Graham attempting to work the pump on the shotgun, without success.

Craig Reese testified that he saw Graham leave the house before the shooting and struggle with Mrs. Cantrell, but he did not see a gun. He then heard "a pistol shot, and then a shotgun and then two or three more pistol shots." Bennie Tanner, who is the sister-in-law of Reese and lived behind the Cantrell house, stated that she heard four or five "bangs" (resembling the sound of firecrackers), followed by one "boom" (resembling a cherry bomb).

Cantrell received a fatal wound to the chest, from a distance of about ten feet. Graham was shot in the heart with a .32 caliber pistol, but survived. Expert medical witnesses called by the State testified that, in their opinion, it was unlikely that Cantrell could have fired the pistol after receiving the fatal wound. There was also evidence that when the shotgun was examined it was jammed by a slug which was embedded in the slide mechanism, rendering it inoperable. One spent shell casing was found within the shotgun. Two more empty shell casings were found on the ground at the scene of the shooting.

1. Graham contends that the trial court erred in declining to direct a verdict of acquittal upon Graham's motions at the close of the State's evidence and at the close of all the evidence. "Where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty' as to the entire offense or to some particular count or offense, the court may direct the verdict of acquittal to which the defendant is entitled under the evidence and may allow the trial to proceed only as to the counts or offenses remaining, if any." OCGA § 17-9-1 (Code Ann. § 27-1802). See *Zuber*

*v. State,* 248 Ga. 314 (3) (282 SE2d 900) (1981).

Mrs. Cantrell testified that Graham verbally threatened to kill the victim and fired two shots before the victim ever produced a gun. Evidence that Graham's shotgun was rendered inoperable by a projectile apparently fired from the victim's pistol shows only that the victim fired at least one shot after receiving the fatal wound, which is consistent with Mrs. Cantrell's testimony that the victim continued to fire his gun as he fell. Expert opinion that it was unlikely that the deceased could have fired a shot after receiving the fatal wound merely created a conflict in the evidence. Thus it was not error to refuse to direct a verdict of acquittal at the close of the State's evidence or at the close of all the evidence.

2. The trial court did not err in instructing the jury that before they could consider evidence of the character for violence of the deceased, they had to determine that there was a prima facie showing by the defendant or by the witnesses that the deceased was the assailant, that the accused had been attacked, and that the accused was honestly seeking to defend himself. See *Henderson v. State,* 234 Ga. 827, 828 (218 SE2d 612) (1975); *Black v. State,* 230 Ga. 614 (3) (198 SE2d 314) (1973). Graham contends that this instruction was burden-shifting, in violation of *State v. Moore,* 237 Ga. 269 (1) (227 SE2d 241) (1976). The trial court's charge, if it placed any burden at all on the defendant, did not have the effect of requiring him to disprove any element of the offense with which he was charged; rather, it was but instructive as to the relevance and admissibility of circumstantial evidence. Further, under the facts of this case the admissibility of such character evidence is questionable, and its receipt into the evidence, with instructions, was beneficial to Graham.

3. Graham contends that the trial court erred in admitting into evidence two empty shell casings found in the vicinity of the shooting. One was located on the day of the incident, and the other was recovered four days later. Graham contends that there was not a sufficient showing that the shells had been ejected from his shotgun.

"[W]hen the relevance of evidence is in doubt, the Georgia rule favors its admission and submission to the jury with any needed instructions. [Cit.] When facts are such that the jury, if permitted to hear them, may or may not make an inference pertinent to the issues, according to the view which they may take of them, in connection with the other facts in evidence, they are such that the jury ought to be permitted to hear them. [Cits.] That the testimony objected to falls short of proving the fact sought to be established, is not in itself sufficient reason for excluding it, provided that it, alone or in connection with other pertinent testimony, tends to prove the matter

in issue." *Allanson v. State,* 144 Ga. App. 450, 453 (241 SE2d 314) (1978).

The evidence in question supported testimony that the shotgun was fired three times. That the shells were not shown positively to have been ejected from Graham's gun, and that one shell was found four days after the shooting, go to the weight of the evidence, and not to its admissibility.

4. The trial court instructed the jury as follows: "A primary question for you to determine, and it is incumbent upon the State to prove, is the causal connection between the alleged injury and the death of the decedent. If upon consideration of the case and the evidence and the instructions given you by the Court, if this defendant did kill this decedent by using the certain shotgun as alleged in the indictment, then you would be authorized to convict him." This was followed by an extensive charge as to the elements of self-defense. In addition, the court instructed the jury that the accused was entitled to the presumption of innocence, that criminal intent is never presumed, and that intent to kill is a necessary element which the State must prove beyond a reasonable doubt.

The charge, taken as a whole, did not relieve the State of the burden of proving beyond a reasonable doubt every element of the crime charged. *Johnson v. State,* 249 Ga. 621 (1) (292 SE2d 696) (1982). In addition, no objection or reservation was made to this portion of the charge when the trial court inquired as to exceptions. *White v. State,* 243 Ga. 250, 251 (253 SE2d 694) (1979).

5. The failure of the trial court to charge the law of voluntary manslaughter, absent a written request, was not error. *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976).

6. We have reviewed the remaining enumerations of error with respect to the jury charge, and find them to be without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 5, 1983 —
REHEARING DENIED JANUARY 25, 1983.

*B. Andrew Prince,* for appellant.

*Jeff C. Wayne,* District Attorney, *Bruce L. Udolf,* Assistant District Attorney, *Michael J. Bowers,* Attorney General, *Janice G. Hildenbrand,* Staff Assistant Attorney General, for appellee.