## 41816. COLE v. THE STATE.
(329 SE2d 146)

HILL, Chief Justice.

In this felony murder case, Gilbert Cole, Jr., a Bibb County sheriff's deputy, was convicted of killing his 29-year-old stepson. He was sentenced to life in prison and appeals.[1]

After the defendant, who had worked in drug enforcement, and his stepson, Carlos Antonio Linder, had been drinking together all day, an argument commenced which involved, according to the defen-

---

[1] The victim was shot on December 3, 1983, and defendant was convicted on February 23, 1984. His motion for new trial was filed on March 22; the trial transcript was filed on June 15; and the motion was overruled on August 10, 1984. Notice of appeal was filed in the trial court on September 6; the record was docketed in this court on December 17, 1984, and the case was argued on February 2, 1985.

dant, the victim's intention to attend a party that night at which he expected to indulge in the use of illegal drugs. The verbal battle deteriorated into a fist fight in the back seat of the car in which they were riding, at which point the defendant threatened to kill the victim. The family removed the victim from the car, but he broke away and kicked the defendant in the head. The defendant then opened the glove compartment, removed a .38 caliber revolver and got out of the car. He fired a shot into the air, saying "Come on . . . I'll kill you." The victim said "No, Dad, you come on" and waved his arms. The defendant claims that in response to this threatening gesture from the victim, who admittedly was unarmed, he fired a shot into the victim's chest. The jury found him guilty of felony murder, having killed the victim in the commission of an aggravated assault. The evidence was sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. In order to bolster his defense that he was trying to help the victim by dissuading him from further use of drugs, the defendant enumerates as error the trial court's refusal to admit into evidence five specific incidents involving the victim's prior drug use.[2] He argues that specific evidence of the victim's prior drug usage was relevant and admissible in order for the jury to understand the amount of passion experienced by the defendant, who had often lectured on the abuse of drugs to school children, by the victim's insistence on going to a party at which he intended to use drugs. Without being able to show his deep feelings resulting from these specific incidents, he contends he was deprived of evidence necessary to support a conviction for voluntary manslaughter rather than murder.[3]

While on the stand the defendant testified as to his concern about the victim wanting to use drugs that night and that this concern, along with the victim's prior history of drug use, had precipitated their fight.

Voluntary manslaughter is defined in OCGA § 16-5-2 as follows: "A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from *serious provo-*

---

[2] The five incidents he sought to reveal were (1) that the victim was high on cocaine when he had had a diving accident and broke his neck; (2) that marijuana had been found in the victim's grandmother's car after the victim had used it; (3) that the defendant had once smelled smoke in the victim's room; (4) that the victim said he had been disciplined while in the Army after marijuana was found in his locker; and (5) that the victim once said he was high and contemplating suicide. None of the other family members who were witnesses said anything about a drug problem, though they were cross-examined about it.

[3] The trial court did charge the jury on voluntary manslaughter, and in view of the argument and fight such charge was proper.

*cation sufficient to excite such passion in a reasonable person; . . ."* (Emphasis supplied.) The desire to prevent a drug user from using drugs again is not sufficient provocation to reduce murder to voluntary manslaughter. Compare *Burger v. State*, 238 Ga. 171 (231 SE2d 769) (1977). We find no error in the exclusion of evidence of specific incidents of prior drug use by the victim.

For the same reasons, the trial court did not err in denying the defendant's motion to subpoena the victim's service records in order to prove that the victim used illicit drugs while in the Army. Insofar as the defendant sought the records to show the victim's tendency to violent and aggressive behavior in order to bolster his self-defense theory, we also find no error. No other evidence of such character was presented by the defense, and, unless these records reflected prior difficulties with the defendant himself (of which the defendant would have had knowledge), they would not have been admissible. *House v. State*, 252 Ga. 409, 413 (314 SE2d 195) (1984).

2. The defendant next complains that the application of the felony murder rule where the underlying felony is aggravated assault violates his constitutional rights in that it deprives the jury of finding a defendant guilty of voluntary manslaughter. Defendant urges that, assuming for purpose of argument that he did not act in self-defense, the uncontradicted facts show that he assaulted the victim with a deadly weapon; i.e., that he committed aggravated assault, a felony, OCGA § 16-5-21; that the victim died from the shooting; that he therefore was guilty of felony murder, OCGA § 16-5-1 (c); and that the "defense" of voluntary manslaughter, OCGA § 16-5-2, was thus unavailable to him.

We note at the outset that voluntary manslaughter is a crime, not a defense. The General Assembly prescribes the conduct which constitutes a crime and felony murder is a crime. OCGA § 16-5-1 (c). The General Assembly has not seen fit to limit felony murder to independent felonies such as armed robbery, arson, burglary, rape, etc., and this court finds no constitutional violation in the General Assembly's declaring felony murder to be a crime.

We therefore reaffirm our holdings in *Baker v. State*, 236 Ga. 754 (1) (225 SE2d 269) (1976), and its progeny. Nothing said herein is intended to modify our holding in *Malone v. State*, 238 Ga. 251, 252 (232 SE2d 907) (1977).

3. The defendant contends the trial court improperly admitted an incriminating statement made to a police officer after he had been given his *Miranda* [*v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)] warnings and after he had invoked his right to remain silent. He urges that he was "functionally interrogated" and felt compelled to explain his actions when the arresting officer told him the officer would call the chief of police to report the defendant's arrest,

and the chief of police would then notify the defendant's supervisor in the sheriff's office.[4] We find no error here. *Rhode Island v. Innis*, 446 U. S. 291 (100 SC 1682, 64 LE2d 297) (1980); *Williams v. State*, 249 Ga. 839, 842 (295 SE2d 74) (1982).

4. The defendant's next enumeration complaining about the improper admission of a photograph of the victim after autopsy presents no grounds for a new trial because the part of the photograph depicting the autopsy incision was cut off, leaving only the head and shoulder and showing that the victim had a black eye, which the state sought to show as part of its case, and a small amount of blood, which resulted from the gunshot wound itself. *Brown v. State*, 250 Ga. 862 (5) (302 SE2d 347) (1983).

5. In view of the defendant's statements, before and after the shooting, there was no error in failing to direct a verdict of acquittal of malice murder. *Graham v. State*, 250 Ga. 473, 475 (298 SE2d 499) (1983).

*Judgment affirmed. All the Justices concur, except Clarke and Gregory, JJ., who dissent.*

GREGORY, Justice, dissenting.

I dissent as to Division 1 of the majority opinion.

I have no hesitancy to hold that one who kills another to prevent him from using drugs is not justified. That is comparable to the holding in *Burger v. State*, 238 Ga. 171 (231 SE2d 769) (1977), where it was decided that the act of a husband in killing his wife and her paramour discovered in a compromising setting was not justified. But I am not willing to go further and hold as a matter of law that a stepson, with a history of drug use, who threatens his stepfather with again using drugs never constitutes that provocation which may reduce murder to voluntary manslaughter. OCGA § 16-5-2. It was expressly recognized in *Burger*, that the paramour situation might constitute provocation. I would hold as much here.

I am authorized to state that Justice Clarke joins in this dissent.

DECIDED APRIL 30, 1985.

*Anthony R. Cueto, J. Robert Daniel, Stephanie Batcheller, Sandra J. Popson,* for appellant.

*Willis B. Sparks III, District Attorney, Michael J. Bowers, At-*

---

[4] When the arresting officer informed the defendant of the procedural reporting which would ordinarily take place, the defendant responded with the statement which prompted this objection: "I beat the kid and I wasn't going to take an . . . whipping. I'm not taking an . . . whipping from nobody. I practically raised the kid. I just hope he didn't die."

*torney General, Dennis R. Dunn,* for appellee.