STATE OF NORTH CAROLINA v. DAVIS GRANT BARBER

No. 511A85

(Filed 12 August 1986)

**1. Criminal Law § 88.1— inconsistent statements—cross-examination not unduly limited**

The trial court did not violate defendant's right to confront and cross-examine the State's witnesses by refusing to allow him to cross-examine the six-year-old rape victim about prior inconsistent statements she made during the competency *voir dire* where defendant was allowed to ask the victim substantially the same questions both on *voir dire* and later before the jury without objection, and defendant failed to show that the verdict was improperly influenced by the court's ruling.

**2. Criminal Law § 82— clergy-communicant privilege inapplicable**

The clergy-communicant privilege of N.C.G.S. § 8-53.2 did not bar a witness's testimony about statements made to him by defendant where (1) the witness was not an ordained minister or clergyman at the time defendant confessed to him, and (2) the only purpose of defendant's visit to the witness was to confide in a friend and not to seek spiritual comfort and guidance.

**3. Criminal Law § 82— clergy-communicant privilege—no discretion in court to require disclosure**

Under the 1967 amendment to N.C.G.S. § 8-53.2, the trial courts have no discretion to compel disclosure when the clergy-communicant privilege exists.

**4. Criminal Law § 102.8— comments on defendant's failure to testify—harmless error**

Assuming *arguendo* that the prosecutor's comment during jury argument that defendant was exercising his *Miranda* rights "right now to have this trial before you" and his comments about "uncontradicted evidence" of penetration amounted to improper comments on defendant's failure to testify, the trial court's error in overruling defendant's objections to these comments was harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt. N.C.G.S. § 15A-1443(b).

APPEAL by the defendant from a judgment entered on 1 May 1985 by *Owens, J.,* in Superior Court, CALDWELL County.

The defendant was charged in a bill of indictment, proper in form, with two counts of first degree rape of his five-year-old adopted daughter. The jury found the defendant guilty on both counts of first degree rape. The trial court imposed two life sentences to run concurrently. The defendant appealed to the Supreme Court as a matter of right under N.C.G.S. § 7A-27(a). Heard in the Supreme Court on 11 March 1986.

*Lacy H. Thornburg, Attorney General, by David Roy Blackwell and Steven F. Bryant, Assistant Attorneys General, for the State.*

*Malcolm R. Hunter, Jr., Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

The defendant has brought forward assignments of error by which he contends that the trial court erred in refusing to allow the defendant to cross-examine the six-year-old victim about testimony she gave during the competency *voir dire*, that the trial court erred in admitting the testimony of Michael Barrier in violation of the clergy-communicant privilege, and that the trial court permitted the prosecutor to impermissibly comment on the defendant's failure to testify. The assignments and contentions are without merit.

The defendant was charged with the first degree rape of his five-year-old adopted daughter. The trial court conducted a *voir dire* to determine whether the child, who was six at that time, was competent to testify. After questioning of the child by the prosecutor and the defense attorney, the trial court made findings of fact and concluded that the witness was competent to testify.

The child testified that she stayed with the defendant, her father, when her mother was in the hospital having a baby. She testified in substance that during that time, the defendant engaged in sexual intercourse with her. She also testified concerning another occasion on which the defendant had "done the same thing." The second offense occurred when her mother left her at home with the defendant and her brother.

The child first told her maternal grandmother about these acts by the defendant while her grandmother was giving her a bath. At that time the child's vagina appeared red and she said that it hurt. In response to her grandmother's questions, the child told her grandmother what had occurred and that the defendant had done this "lots of times."

Sue Thomas, the child's grandmother, corroborated her granddaughter's testimony. Thomas stated that while she was giving the child a bath on 30 May 1984, the child refused to sit

down in the bathtub. When she asked the child if anyone had touched her "private parts," the child told her that the defendant had touched her vagina. Thomas described the child's vagina as being "red and inflamed." Thomas questioned her further about the incident. The child told her that the defendant had removed her panties and "told her that he was going to stick it all the way up in her." The child also told her grandmother about the other incident which had occurred when her mother had been away.

Lisa Barber, the child's mother and the defendant's wife, gave testimony tending to corroborate the testimony of the child and Thomas.

Dr. Thomas Cruden, a physician in family practice, testified to the results of his medical evaluation of the child on 31 July 1984. He testified that the hymen ring appeared more open than one would expect for a five-year-old girl. He further testified that the anterior fourchette appeared to be scarred. Dr. Cruden opined that these findings were abnormal and "consistent with some form of relative blunt pressure or trauma in the area long enough ago to have healed."

After a *voir dire* hearing was conducted, Detective J. J. Amelia of the Lenoir Police Department testified that he informed the defendant of his Miranda rights. Amelia testified that the defendant stated he had fondled his adopted daughter and had rubbed his penis against her vagina.

Michael Barrier testified that he was a friend of the defendant and had previously worked with him. Barrier testified that in late May 1984, the defendant came to his house, was very upset and wanted to talk. The defendant objected to further testimony concerning the conversation between Barrier and the defendant on the ground that Barrier is a preacher and the communication between them was privileged. The trial court conducted a *voir dire* hearing and determined that Barrier was neither ordained nor licensed as a minister. The trial court then concluded the clergy-communicant privilege of N.C.G.S. § 8-53.2 was inapplicable.

Barrier testified that the defendant told him he was afraid. Barrier also testified that "[defendant] said he tried to put it in but when she cried and said it hurt, he said he didn't go all the way with it and he pulled it out and said I will not do it again."

[1]  By his first assignment of error, the defendant contends that the trial court abridged his right to confrontation and cross-examination by refusing to allow him to question the victim in the presence of the jury about her inconsistent testimony during the competency *voir dire*. The defendant contends that he had an absolute right to cross-examine the victim on matters regarding her credibility. We find no error.

During the competency *voir dire*, the prosecutor asked the child victim, "Is it good or bad to tell the truth?" She replied "Bad." The prosecutor again asked whether it was good or bad to tell the truth. The defendant's counsel's objection was overruled. The child answered "Bad" and then changed her answer to "Good." On recross-examination, the defendant's counsel asked the child:

You said you told this gentleman right here that it is bad to tell the truth, and it is bad to tell the truth?

The prosecutor objected on the ground that the question had been previously asked and answered. The trial court sustained the objection on the ground the victim's answer was in the record. The trial court made the appropriate findings of fact and concluded that the child was a competent witness. The defendant did not object to the trial court's conclusion of competency.

On cross-examination before the jury, the defendant's counsel attempted to question the child about her testimony during the competency *voir dire*. The following transpired:

Q. And you told the judge awhile ago, did you not, the gentleman up here . . .

MR. JONES: Objection to any statement made on voir dire.

COURT: Sustained.

MR. PALMER: Your Honor, I want her answer in the record.

Q. You told the judge awhile ago did you not that it is bad to tell the truth?

MR. JONES: Objection.

COURT: Sustained.

Q. And you told the judge awhile ago, did you not, that you know what a lie is?

MR. JONES: Objection.

Q. Did you not?

MR. JONES: Objection. I object to any further questions along this line and move that they be disallowed and put in at a later time.

COURT: Objection is sustained.

Q. Sweetheart, you said that you were . . . went to church some time with your nanny, did you not?

MR. JONES: Objection.

A. Yes.

MR. JONES: Object to questions on the voir dire being asked. Move to strike all of this line of questioning.

COURT: Sustained as to the line of questioning starting with, you said.

The defendant contends he attempted to cross-examine the child by confronting her with prior inconsistent statements from the competency *voir dire*. The defendant contends that the trial court's ruling denied him the right of engaging in permissible cross-examination. *State v. Green*, 296 N.C. 183, 250 S.E. 2d 197 (1978); *State v. Davis*, 291 N.C. 1, 229 S.E. 2d 285 (1976); *Citizens Bank v. Motor Co.*, 216 N.C. 432, 5 S.E. 2d 318 (1939).

We recognize the importance of the defendant's constitutional right to confront and cross-examine the State's witnesses. Nevertheless, this Court has stated that:

While it is axiomatic that the cross-examiner ought to be allowed wide latitude, the trial judge has the responsibility to exercise his discretion in such a way that unduly repetitive and argumentative questioning, as well as inquiry into matters which are only peripherally relevant, are banned.

*State v. Royal*, 300 N.C. 515, 528, 268 S.E. 2d 517, 526 (1980). Since the scope of cross-examination is largely within the trial court's discretion, its rulings will not be held to be error in the absence

of a showing that the verdict was improperly influenced by the limited scope of the cross-examination. *State v. Ford*, 314 N.C. 498, 505, 334 S.E. 2d 765, 770 (1985); *State v. Woods*, 307 N.C. 213, 297 S.E. 2d 574 (1982).

The defendant has failed to make a showing that the verdict was improperly influenced by the trial court's ruling. A review of the record convinces this Court that the defendant was allowed to ask the child substantially the same questions both on *voir dire* and later before the jury without objection. The trial court had no duty to require her to answer them again. *See State v. Harrill*, 289 N.C. 186, 221 S.E. 2d 325 (1976). The defendant's first assignment of error is without merit.

[2] By his second assignment of error, the defendant contends that the trial court erred in allowing the testimony of the State's witness Michael Barrier. The defendant contends that his statements to Barrier are privileged under the clergy-communicant privilege. N.C.G.S. § 8-53.2 provides:

> No priest, rabbi, accredited Christian Science practitioner, or a clergyman or ordained minister of an established church shall be competent to testify in any action, suit or proceeding concerning any information which was communicated to him and entrusted to him in his professional capacity, and necessary to enable him to discharge the functions of his office according to the usual course of his practice or discipline, wherein such person so communicating such information about himself or another is seeking spiritual counsel and advice relative to and growing out of the information so imparted, provided, however, that this section shall not apply where communicant in open court waives the privilege conferred.

The clergy-communicant privilege is not applicable in the case *sub judice*.

A *voir dire* was conducted by the trial court to determine the applicability of the clergy-communicant privilege. Michael Barrier testified that when the defendant came to talk to him, they were friends and had previously been co-workers. Although they were not members of the same church, they had attended church together several times. After being asked whether he was an ordained minister, Barrier responded:

No, I am not ordained. I can explain this. I am a licensed exhorter by the Church of God. At the time that Grant came and talked to me I had no licenses of any kind with any organization. I had been licensed with the Christian Ministry out of Tennessee and they [sic] had expired at that time. My license was invalid at the time I talked to him. I was still conducting services at times but as far as to say ordianed [sic] minister I was not becuase [sic] to be such I had to have the hands of an ordianed [sic] minister laid upon me and I had not. I am a licensed exhorter right now and I got the license in July or August of 1984.

Q. How long have you been a friend of Mr. Barber?

A. Approximately four years.

Q. You become a friend of his as a fellow employee?

A. Fellow employee and he knew at the time I was conducting services and spreading the word but as far as being ordianed [sic], I did not have any such license at that time.

. . . .

When Grant talked to me, he only asked me not to tell anyone because he didn't want it all exposed and hurt . . . [the victim] or anyone else and I didn't go anywhere to tell anybody but I told my wife for I don't keep nothing from my wife as far as telling her things but I did not tell anyone at the time.

The trial court concluded that Barrier was neither an ordained minister of an established church nor a clergyman and that the statute, N.C.G.S. § 8-53.2, was inapplicable.

Our research has revealed a paucity of cases involving the application of the clergy-communicant privilege. A review of these few cases, the *voir dire* testimony, and the statute leads us to the conclusion that the trial court was correct in concluding that the privilege was inapplicable.

Our conclusion is not based on a determination that the Christian Ministry of Tennessee from which Barrier received a license for a ten dollar fee is not an established church within the meaning of the statute. *See generally State v. Lynch*, 301 N.C.

479, 272 S.E. 2d 349 (1980); *State v. Bray*, 35 N.C. 289 (1852). Instead, we conclude that the clergy-communicant privilege did not bar Barrier's testimony for two reasons. First, Barrier was not an ordained minister or clergyman at the time the defendant confessed to him. Second, the statements made by the defendant were not "entrusted to him in his professional capacity and necessary to enable him to discharge the functions of his office . . . wherein such person so communicating such information . . . is seeking spiritual counsel." *See State v. West*, 317 N.C. 219, 345 S.E. 2d 186 (1986). *See generally* Note, *Evidence—Privileged Communications—The New North Carolina Priest-Penitent Statute*, 46 N.C. L. Rev. 427 (1968).

During the *voir dire*, Barrier testified that at the time the defendant confessed to him, he was not an ordained or licensed minister of any church and did not hold any office in any church. He had preached from the pulpit several times and had taught Sunday School. Although Barrier "would spread the Gospel" as often as he was allowed, the evidence is clear that he was not a person the statute was enacted to cover.

Barrier also testified that he and the defendant had been friends since they had worked together at the same plant. In *Burger v. State*, 238 Ga. 171, 231 S.E. 2d 769 (1977), the court refused to apply the priest-penitent privilege. In *Burger*, as here, the minister-witness had been the defendant's friend and frequent companion. The court found that the defendant did not make the statements while seeking spiritual comfort and guidance but that they were conversational statements to a friend. The same is true in the case *sub judice*.

The defendant cites *State v. Jackson*, 77 N.C. App. 832, 336 S.E. 2d 437 (1985), in which statements made by the defendant to a minister who was his aunt and also the victim's mother were held to be privileged. In *Jackson*, the minister visited her nephew, the defendant, several times while he was in jail. During her visits, they prayed together and she sought to comfort him. The Court of Appeals stated that "[h]is admissions came after they prayed together. The comfort and encouragement she gave him can fairly be described as spiritual counsel." 77 N.C. App. at 334, 336 S.E. 2d at 438.

We find the facts in the present case more similar to those of the *Burger* case than to those of *Jackson*. In the case *sub judice*, the defendant asked Barrier not to tell anyone about their conversation to avoid hurting the victim. The evidence clearly establishes that the only purpose of the defendant's visit was to confide in a friend.

[3] The trial court further concluded that "even if said statute is applicable the court is of the opinion and concludes as a matter of law that in the interest of justice this testimony should be allowed." Although this was error, it was not prejudicial.

The General Assembly enacted the clergy-communicant statute in 1959. It contained a provision that the trial court could compel disclosure in its discretion when necessary to the proper administration of justice. 1959 N.C. Sess. Laws ch. 696. The statute was amended in 1967 to remove the provision by which the trial court could compel such testimony to satisfy the ends of justice. 1967 N.C. Sess. Laws ch. 794. *See* Note, 46 N.C. L. Rev. at 429-30. The 1967 amendments reveal the General Assembly's intent to remove from the trial courts any discretion to compel disclosure when the clergy-communicant's privilege exists.

The trial court erred in concluding that the testimony should be allowed in the interest of justice and in admitting it for that reason. Since the clergy-communicant privilege was inapplicable, however, the trial court's error was not prejudicial.

[4] By his final assignment of error, the defendant contends that the prosecutor improperly commented on his failure to testify. The defendant contends these comments violated his fifth and fourteenth amendment rights to remain silent. *Griffin v. California*, 380 U.S. 609, 14 L.Ed. 2d 106 (1965); *State v. McCall*, 286 N.C. 472, 212 S.E. 2d 132 (1975).

The defendant complains of the following portions of the prosecutor's closing argument:

There has been a lot of discussion in this case and you have been told about the defendant's rights. He has rights, and he has had those rights protected every step of the way. You have heard testimony about his Miranda rights, rights he is exercising right now to have this trial before you. And ladies and gentlemen—

MR. PALMER: Objection to that argument, Your Honor.

THE COURT: Objection overruled.

In addition, the defendant complains that the prosecutor's comments on "uncontradicted evidence" of penetration also were improper comments on the defendant's failure to take the stand. *United States v. Rodriquez*, 627 F. 2d 110 (7th Cir. 1980); *United States v. Flannery*, 451 F. 2d 880 (1st Cir. 1971). *Contra*, *State v. Mason*, 317 N.C. 283, 345 S.E. 2d 195 (1986); *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986).

Assuming *arguendo* that these arguments by the prosecutor amounted to improper comments on the defendant's failure to testify and the trial court erred in overruling the defendant's objections to these comments, the error was harmless beyond a reasonable doubt in light of the overwhelming evidence of the defendant's guilt. N.C.G.S. § 15A-1443(b).

The defendant received a fair trial free of prejudicial error.

No error.