George H. Lowe, U. S. Atty., N.D.N.Y., Albany, N. Y., for plaintiff; William J. Dreyer, Asst. U. S. Atty., Utica, N. Y., of counsel.

Herald Price Fahringer, New York City, E. Stewart Jones, Jr., Troy, N. Y., for defendant; Lipsitz, Green, Fahringer, Roll, Schuller & James, New York City, of counsel.

**UNITED STATES of America**

v.

**Richard J. GORDON, Defendant.**

**Nos. 79–CR–135, 80–CR–24.**

United States District Court,
N. D. New York.

June 16, 1980.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, District Judge.

The trial of this case on eleven counts in two indictments commenced on Tuesday, June 3, 1980. It continues to the present date and will continue into the future. The trial was not held for several days due to the necessity for the court to hear other court matters and important commitments of defense counsel. I have written two decisions in the case: One of May 30, 1980, denying most of the portions of an omnibus motion of the defendant, and the remaining portion relating to oral statements made to an FBI agent at the time of arrest, and the issue of unreasonable search and seizure by decision of May 23, 1980. A suppression hearing was held on these oral statements

and search and seizure questions by the Court on April 22, 1980. A new issue is now raised by the defense at this stage of trial in regard to the proposed testimony of a government witness claimed to involve statements made to that witness that should be precluded under the priest-penitent privilege of absolute confidence.

A suppression hearing was held by the Court on this issue that was not raised, at least with specificity by the defense before the trial commenced. The challenge was entertained at the hearing held outside of the presence of the jury on Friday, June 13, 1980. Three witnesses testified: Father James Meyers, a Catholic priest; the sister of the defendant, and the defendant, Richard J. Gordon, himself.

■ After due consideration and appraisal of this testimony, it is my finding that the conversations between the defendant and Father Meyers, only one, at his request, at a personal meeting at 7:00 a. m. on September 25, 1979, in the home of the defendant, and the several others thereafter in telephone conversations, were in no sense made during a priest-penitent relationship. The communications by the defendant to Father Meyers related to pure business relationships, and were not made in a priest-penitent setting or atmosphere. I find the defendant was enlisting the aid of a salaried employee, Father Meyers, who held executive positions in his companies, to talk to Norbert Meister, known to the defendant to be a close friend of the priest, concerning business transactions that Meister had with the defendant's companies. I find the defendant knew the priest was on a leave of absence from the priesthood. The content of the communications was carefully elicited by the attorneys at the preclusion hearing, held in open court, but enough is in the record to know that the purpose of the personal meeting was to have Father Meyers convey messages from the defendant to Meister about business problems. Such purpose in itself greatly weakens any claim of confidence and non-disclosure arising from a priest-penitent relationship. The efforts of the priest to seek legal and religious advice from attorneys and other priests, I find, constituted a careful and conscientious attempt to support his own state of mind in view of the implications of the statements of the defendant to him, made in a later telephone conversation, concerning priesthood and confidence. The trial attorney for the defendant urges that in cross-examination, Father Meyers said he did not recall certain statements the defendant claims to have made before and during the conversations that he was only talking to Father Meyers as a priest and with confidence the things he told Father Meyers would never be repeated. The failure to recall by Father Meyers does not establish undisputed credence, and the statements not recalled as stated in questions on cross-examination and testified to by the defendant are still subject to examination for their weight. The statements of that nature, I find, were made only at a later stage in a telephone call and do not alter the obvious fact that only business matters and difficulties were being discussed with the express request of the defendant in regard to the communications that they be made known to others.

There is not a great deal of federal case law on an evidentiary question of this kind but there is enough to uphold with confidence the government's position. *See* Federal Rules of Evidence Manual, Second Edition, Saltzburg & Redden, p. 210. The authors of the Manual, Professors at the University of Virginia Law School, stated they could only locate three federal cases involving the Clergyman-Penitent privilege, *Mullen v. United States*, 263 F.2d 275 (D.C.Cir. 1958); *United States v. Wells*, 446 F.2d 2 (2d Cir. 1971); *In re Verplank*, 329 F.Supp. 433 (C.D.Cal.1971). Since that statement there has been a unanimous decision handed down recently by the United States Supreme Court on the subject, *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).

■ Chief Justice Burger in his opinion in *Trammel* notes that the Federal Rules of Evidence acknowledge the authority of the federal courts to continue the evolutionary

development of testimonial privileges in federal criminal trials. He particularly emphasized that by the provisions of F.R.Evid. 501, Congress manifested an affirmative intention not to freeze the law of privilege, but to provide the federal courts with the flexibility to develop rules of privilege on a case-by-case basis. It is emphasized that the privilege between priest and penitent is limited to private communications, a privilege recognizing "the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." I do not find that these factors and circumstances existed in the situation here. Even under the New York Court of Appeals case cited by the defendant, *Matter of Keenan v. Gigante*, 47 N.Y.2d 160, 166, 417 N.Y.S.2d 226, 390 N.E.2d 1151 (1979), the challenged conversations, I find, related to business matters and could not, in my judgment, be considered ones as described by the State court made in confidence to a clergyman in his spiritual capacity. The standard to be met in this Second Circuit was set forth by the late Circuit Judge J. Joseph Smith of the United States Court of Appeals, Second Circuit, in these words in *United States v. Wells, supra,* at p. 4:

> [w]hile the privilege has been recognized in the federal courts it appears to be restricted to confidential confession or other confidential communications of a penitent seeking spiritual rehabilitation.

The request for a preliminary ruling that the testimony that may be offered by the government in relation to these communications and conversations is precluded, and for their exclusion if developed at the trial, is hereby denied.

It is so Ordered.