OPINION OF THE COURT
William G. Giaccio, J.
The court has before it a motion to dismiss the indictment against the defendant, Edwin Reyes, on the grounds that certain Grand Jury testimony was heard in violation of the defendant’s right to keep a privileged communication secret.
The defendant is charged in a 24-count indictment, the most serious charge being attempted murder in the second degree. It is alleged that on or about December 16, 1988 the defendant *806 entered a commercial residence in the County of Queens, where an acquaintance was employed. At that time he held several people at bay and fired a shot. Subsequently, the defendant left the premises and went to St. Mary’s, a nearby church.
At issue is the Grand Jury testimony of Father John Schmidt. Father Schmidt, a priest at St. Mary’s, testified that on December 16, 1988 at approximately 1:20 p.m., his secretary told him that there was a man in his office who wanted to see a priest. The man, Edwin Reyes, was told to wait in the church. At that time Father Schmidt went into the church to talk to Edwin Reyes. Mr. Reyes, who the . priest stated seemed very distraught, told Father Schmidt that he had hurt his mother, who . was a member of this parish and that she was a saint. The defendant also stated that everyone knew that he had done something very bad. At this point the priest took the defendant into the rectory. The defendant continued to tell the priest that he made 10 or 12 people lay on the floor and that he had fired a shot. The priest asked Mr. Reyes whether he still had the gun and the defendant stated that he did and pointed to his hip. Father Schmidt told the defendant that if he didn’t hurt anyone he would be better off turning himself in to the 108th Precinct. The defendant said no and he told Father Schmidt that he wanted to pray. A short time later Father Schmidt ran to the 108th Precinct which is approximately 100 yards from the church. On his way to the precinct Father Schmidt yelled to several police officers that there was a man in the rectory with a gun. The officers went into the rectory, removed the gun from the defendant and placed him under arrest.
The issues presented before this court are whether the conversation between the defendant and Father Schmidt was a privileged communication which should not have been heard by this Grand Jury and if this testimony was in fact improperly heard by this Grand Jury must this court dismiss the indictment.
It is clear that New York does not recognize any common-law priest-penitent privilege (Matter of Keenan v Gigante, 47 NY2d 160 [1979], cert denied sub nom. Gigante v Lankler, 444 US 887). Any privilege that exists does so because of CPLR 4505 which states as follows: "Unless the person confessing or confiding waives the privilege, a clergyman, or other minister of any religion or duly accredited Christian Science practitioner, shall not be allowed to disclose a confession or confi *807 dence made to him in his professional character as spiritual advisor.”
The courts have determined that while the clergyman-penitent privilege is to be interpreted literally it is clear that not every communication between a clergyman and a penitent is considered privilege. To be a privileged communication the communication made to the clergyman must have been made to him in his (or her) professional character as a spiritual advisor (see, Matter of Fuhrer, 100 Misc 2d 315 [1979]). The important question then becomes whether Mr. Reyes was seeking advice from Father Schmidt in his role as spiritual advisor.
In the case of United States v Wells (446 F2d 2 [1971]) the appellant wrote a letter to a priest requesting assistance from the priest in getting in touch with an FBI agent and explained his purpose and plan in asking assistance. This letter was introduced into evidence against the defendant at his trial. The Court of Appeals held this letter admissible and not entitled to a cloak of privilege. The court reasoned that the letter contained no hint "that its contents were to be kept secret, or that its purpose was to obtain religious or other counsel, advice, solace, absolution or ministration” (supra, at 4). The appellant merely requested assistance in getting in touch with an FBI agent. In the case before this court, while the defendant was put in touch with the local police, unlike Mr. Wells he wasn’t seeking such assistance. It seems to this court that the defendant, Mr. Reyes, was seeking some type of spiritual advice from Father Schmidt and had the reasonable expectation that his conversation with the priest was to be kept secret. Therefore, Father Schmidt was not at liberty to testify before the Grand Jury as to his conversation with Mr. Reyes.
Accordingly, the conversation between Father Schmidt and Mr. Reyes was a privileged communication which was improperly heard by this Grand Jury. The next question is whether the indictment must be dismissed because the Grand Jury heard testimony which this court has now decided was inadmissible. This court finds that the indictment need not be dismissed.
In the past the courts have dealt with the issue of whether an indictment can be deemed sufficient when some of the evidence the Grand Jury heard was subsequently deemed either incompetent or inadmissible. In the case of People v *808 Oakley (28 NY2d 309) the Court of Appeals held that where an indictment was based on identification testimony which was prima facie competent, any subsequent ruling that the identification testimony was inadmissible did not impair the validity of the indictment. The court in People v Mauceri (74 AD2d 833 [2d Dept 1980]) extended the Oakley rationale to a suppressed confession, holding that a subsequent invalid confession, that was prima facie competent, did not undermine the validity of the indictment. Therefore, it is clear that as in the present case a subsequent finding that ah admission will not be admissible at trial does not undermine the validity of the indictment, especially if there is other evidence beyond the suppressed evidence sufficient for an indictment.
Upon a reading of these Grand Jury minutes the court finds that there was other sufficient competent evidence presented, which, standing alone, would have justified the finding of a true bill as to all of the counts.
Accordingly, defendant’s motion is granted to the extent that defendant’s admissions to the priest are suppressed and cannot be used by the District Attorney at the time of trial, however, the motion to dismiss the indictment is denied.
The court has already ruled at a Mapp hearing on this matter that the gun taken from Mr. Reyes could be admitted at any trial of this action. The court’s present decision finding the defendant’s statement privileged in no way changes the court’s ruling at the Mapp hearing and the gun can be admitted at any trial of this action.