# Dennis RUSSELL v. STATE of Arkansas

CR 91-79 815 S.W.2d 929

Supreme Court of Arkansas
Opinion delivered September 23, 1991

 
 

 ██

*Randy Rainwater*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant, Dennis Russell, tried to kill his daughter and mother and, as a result, was charged with two (2) counts of attempted first degree murder. The counts were tried together. He was convicted of attempted first degree murder for the attack on his daughter and attempted second degree murder for the attack on his mother. He appeals from both convictions in this one appeal. We affirm both convictions.

The evidence, when viewed most favorably to the appellee State, is as follows. On the evening of the attack, the appellant was driving his mother's car from Benton to Mena. His mother, Mary Nelson, was in the front passenger's seat. Two (2) children were in the rear seats; his eight-year-old niece, Kelly Russell, was in the right rear seat, and his two-year-old daughter, Christi Russell, was in the left rear seat. He drove slowly and made frequent stops to smoke cigarettes. His mother became agitated and asked him to speed up. He stopped the car, hit his mother in the face, and choked her. He then began stabbing her with a screwdriver. He started the car and began to drive. He steered with his left hand and continued to stab his mother with the screwdriver in his right hand. His mother finally grabbed the steering wheel and turned the car. He had to stop. She jumped out and fell down into a culvert. When she was found later, she had twenty-two (22) stab wounds, some of them being deep.

A state trooper saw her and stopped. She told him what had happened. He radioed for emergency medical help for the mother, left her with a motorist who had stopped, and started looking for appellant. He found him about half a mile away, near the mother's parked car. Inside the parked car were the two (2) girls. His two year old daughter, Christi, had numerous stab wounds, one stab being so vicious that it had broken a bone in her chest.

Shortly thereafter, an ambulance driven by Scott Brakefield, arrived. Brakefield and the other emergency medical technician placed the mother, Mary Nelson, and the two-year-old, Christi, in the back of the ambulance and put the eight-year-old niece, Kelly, in the front passenger's seat. Brakefield started driving the ambulance to the nearest hospital which was in Hot Springs.

At trial, Brakefield testified that Kelly was talking nervously and told him that she was scared. She was rambling and said, "He was stabbing her." Brakefield asked, "Who was stabbing?" and Kelly replied, "Dennis." Brakefield also stated that Kelly told him, "Dennis told Mary he was going to kill her." Brakefield was at the scene for a total of twelve (12) minutes and the ambulance ride took forty-two (42) minutes.

Appellant objected to this testimony on the ground of hearsay and, more specifically, that the excited utterance exception did not apply because too much time had elapsed between the startling event and the girl's statements. On appeal, Russell argues; (1) that the girl's statements did not come within the excited utterance exception and (2) that there was no evidence that the girl possessed sufficient intelligence to render her statements reliable.

As for his first argument, A.R.E. Rule 803(2) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \*

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

The following are requirements for admissibility of hearsay under the excited utterance exception:

(a) *Nature of the occasion.* There must be some *occurrence, startling enough* to produce this nervous excitement and render the utterance spontaneous and unreflecting. . . . [I]n practically all of the instances —

involving statements after corporal injury by violence —
such conditions are in fact present, and this requirement is
fulfilled. . . .

(b) *Time of the utterance.* The utterance must have
been *before there has been time to contrive and misrepre-
sent,* i. e., while the nervous excitement may be supposed
still to dominate and the reflective powers to be yet in
abeyance. This limitation is in practice the subject of most
of the rulings.

It is to be observed that the statements *need not be
strictly contemporaneous* with the exciting cause; they
may be subsequent to it, provided there has not been time
for the exciting influence to lose its sway and to be
dissipated. . . .

Furthermore, there can be *no definite and fixed limit*
of time. Each case must depend upon its own circum-
stances: . . .

(c) *Subject of the utterance.* The utterance must
*relate to the circumstances of the occurrence preceding it.*
. . . (Emphasis in the original.)

6 J. H. Wigmore, *Evidence* § 1750 (Chadbourn rev. 1976)

Upon the ordinary principal applicable to all testimo-
nial evidence, and therefore to hearsay statements offered
under these exceptions, the declarant must appear to have
had *an opportunity to observe personally* the matter of
which he speaks. . . . (Emphasis in the original. Citations
omitted.)

*Id.* at § 1751.

▋ Here, the declarant was an eight-year-old girl who
witnessed her uncle commit a violent attack upon her grand-
mother and two-year-old cousin. By the very nature of the
occurrence, it was a startling event for her. Less than one hour
elapsed between the event and Kelly's statements to the ambu-
lance driver. Her statements were made under the influence of the
excitement of the startling event. She made them while riding in
the ambulance with her profusely bleeding and seriously injured
grandmother and cousin. Her speech was rambling, and she said

she was still scared. The statements were obviously related to the preceding startling event. Thus, the trial court properly admitted Kelly's statements under the hearsay exception for excited utterances.

■ In the second part of his argument on the excited utterance, appellant contends that the trial court erred in admitting the statement without a showing that Kelly was competent to testify. No such showing was necessary, as we explained in *Bryan v. State*, 288 Ark. 125, 702 S.W.2d 785 (1986). The reason is that, although the hearsay statement lacks the safeguard of being made under oath, the probability of truth in an excited utterance supplies a reliable safeguard.

Appellant next argues that the trial court erred in admitting the opinion testimony of a second emergency medical technician, Reith Stanley, concerning the instrument which caused Mary Nelson's wounds. Stanley attended Nelson in the ambulance. During the State's direct examination of him, he stated that he had previously observed wounds made by screwdrivers. He testified that Nelson's wounds were square-shaped. He stated that it was his opinion that her wounds were caused by a square-headed or a Phillips head screwdriver. Appellant argues that Stanley should not have been allowed to testify concerning the cause of the wounds because this is a matter which requires specialized training and expertise.

A.R.E. Rule 701 states:

Opinion testimony by lay witnesses. If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(1) Rationally based on the perception of the witness; and

(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

■ Lay witnesses are permitted to give their opinion as to the cause of death or other physical condition if the witness is qualified by experience and observation with regard to the subject matter. *McAway v. Holland*, 266 Ark. 878, 599 S.W.2d 387

(Ark. App. 1979).

We have written that the requirements of Rule 701 are as follows:

> [I]n order to satisfy the first requirement of Rule 701, the testimony must initially pass the personal knowledge test of A.R.E. Rule 602. But, even if the witness does have the requisite personal knowledge, any inferences or opinions he expresses must thereafter pass the rational connection and "helpful" tests of Rule 701. "The rational connections test means only that the opinion or inference is one which a normal person would form on the basis of the observed facts. He may express the opinion or inference rather than the underlying observations if the expression would be 'helpful to a clear understanding of his testimony or the determination of a fact in issue.' " *Id.* at 701-11. If however, an opinion without the underlying facts would be misleading, then an objection may be properly sustained. *Id.* at 701-12, -13.

*Carton* v. *Missouri Pac. R.R.*, 303 Ark. 568, 571-2, 798 S.W.2d 674, 675 (1990) (quoting 3 *Weinstein's Evidence* ¶ 701[02], at 701-11, -12, -13 (1987)).

Here, Stanley's testimony concerning the instrument with which Mrs. Nelson's injuries were inflicted was based on his personal knowledge and the observation of her wounds. The opinion was one which a normal person who had previously seen puncture wounds made by screwdrivers would form. Finally, his opinion was helpful to the determination of a fact in issue, the cause of Mrs. Nelson's wounds. The trial court did not abuse its discretion in admitting the testimony.

Russell's final argument is that the trial court erred in not granting his motion for a mistrial based upon Nelson's testimony that she had to assist appellant with visitation of his daughter "[b]ecause he'd made so many threats against his ex-wife—." Nelson gave this testimony during the State's rebuttal. Appellant objected and asked for a cautionary instruction to the jury. The trial court sustained his objection and instructed the jury to disregard the testimony. Russell later moved for a mistrial after the direct rebuttal examination was completed. The court denied

this motion.

■ The testimony to which appellant objected followed his own direct testimony in which he testified:

> And, then we proceeded to go to Mena to pick up my baby, my little girl. And, she let me off at McDonald's because they don't want me to know where my ex-wife lives or nothing, you know, and they've got all kinds of judgments and things saying I can't go see her or nothing so she can stay hid out from me.

Russell further testified that he could see his daughter only when he was accompanied by his mother. With this testimony, Russell "opened the door" to questions concerning why he was unable to see his ex-wife and, therefore, needed assistance with visitation of his daughter. "One who opens up a line of questioning or is responsible for error should not be heard to complain of that for which he was responsible." *Berry* v. *State*, 278 Ark. 578, 583, 647 S.W.2d 453, 457 (1983).

■■ More importantly, it is a settled rule of law that a mistrial is an extreme and drastic remedy which should be resorted to only when there has been an error so prejudicial that justice could not be served by continuing the trial. *Brewer v. State*, 269 Ark. 185, 599 S.W.2d 141 (1980). The granting or denial of a motion for mistrial lies within the sound discretion of the trial judge and the exercise of that discretion should not be disturbed on appeal unless an abuse of the discretion is shown. *Chaviers* v. *State*, 267 Ark. 6, 588 S.W.2d 434 (1979).

Considering all the evidence in this case, Nelson's statement was not so prejudicial as to warrant a mistrial. The court acted properly in admonishing the jury to disregard her statement and continuing the trial.

Affirmed.