Cite as 2025 Ark. App. 323

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-24-553

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered** May 21, 2025 |
| KERRY BURTRAIN | | |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION |
| V. | | [NO. 60CR-21-2353] |
| STATE OF ARKANSAS | | HONORABLE LATONYA HONORABLE, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Kerry Burtrain appeals after he was convicted by a Pulaski County Circuit Court jury of first-degree battery with a firearm. He was sentenced as a habitual offender to serve a total of twenty-five years' imprisonment in the Arkansas Division of Correction ("ADC"). On appeal, Burtrain argues that the circuit court erred by failing to grant a mistrial after one of the State's witnesses made a comment about gangs during his testimony. Burtrain also challenges the sufficiency of the evidence to support his conviction. We affirm.

I. *Relevant Facts*

On June 25, 2021, Burtrain was charged by felony information as a habitual offender with first-degree battery in violation of Arkansas Code Annotated section 5-13-201(a)(8) (Repl. 2024), a Class B felony. The State further alleged that Burtrain's sentence should be enhanced pursuant to Arkansas Code Annotated section 16-90-120 (Supp. 2023) for having

employed a firearm as a means of committing the offense and pursuant to Arkansas Code Annotated section 5-4-501 (Repl. 2024) because of Burtrain's prior felonies.[1] A jury trial was held on May 14–15, 2024, and the State presented the following evidence in support of the first-degree-battery charge.

The State's evidence connecting Burtrain to the shooting centered on the testimony of the victim, Antonio Lea. On the evening of October 21, 2020, Lea went to the home of his friend, Donnie Perry, to watch a hockey game. Lea explained that he knew there were other individuals present in the residence, but he did see anyone other than Perry and Burtrain that evening. Burtrain, whom Lea knew by his nickname "D-Shot," arrived soon after Lea. Lea went outside to talk to Burtrain, who was working on his car that was "running hot." According to Lea, Burtrain "was acting a little sketchy," which gave Lea "a bad feeling so [he] left him alone." Lea went back inside to watch the game with Perry, and a short time later, Burtrain came inside to get water for his car's radiator. At this time, Perry and Burtrain became involved in a verbal altercation inside the residence. Lea explained that he "didn't pay no more mind to it cause I try to stay out of [Burtrain's] way." However, during the altercation, Lea was shot in the back, which caused him to be paralyzed from the waist down. According to Lea, he was able to turn his torso, where he saw Burtrain "holding the gun,

---

[1]Burtrain was also charged with being a felon of possession of a firearm, but this charge was nolle prossed by the State.

looking like the devil, shooting at me." Burtrain then shot Lea several more times, causing Lea to sustain additional injuries to his chest, abdomen, and leg.

During a photo lineup and in the courtroom during trial, Lea identified Burtrain as the person who had shot him. Although Lea initially told investigators that he did not know the shooter's identity, he explained that he waited to identify Burtrain because he was afraid of him, and he did not know Burtrain's real name.

One of the investigators, Sergeant Bryant Miller of the Little Rock Police Department, testified that he recovered seven spent 9mm shell casings, six .380 shell casings, and one WM 20 shell casing from Perry's house. The .380 shell casings were entered into the department's database, which matched three .380 shell casings related to a July 2020 incident where Burtrain went to the hospital for a gunshot wound to his leg. Jennifer Floyd, a senior firearm and toolmark examiner at the Arkansas State Crime Laboratory, testified that she determined that the seven expended cartridges recovered in the present matter matched the expended cartridges from the July 2020 incident and that they were fired by the same gun.

After the State rested its case, Burtrain moved for a directed verdict. Concerning the charge of first-degree battery, Burtrain argued that "[t]here has been no evidence except for Mr. Lea's testimony that Mr. Burtrain is the person that had a gun and shot him on October 21st of 2020. There's no physical evidence or any other witnesses or anything else to corroborate his statement." The circuit court denied the motion. Burtrain rested without calling any witnesses, and he renewed his directed-verdict motion, which was denied. The jury found Burtrain guilty of first-degree battery and that he had employed a firearm as a

means of committing first-degree battery.  He was sentenced as a habitual offender to serve twenty-five years' imprisonment in the ADC.  This appeal followed.

## II.  *Discussion*

### A.  Sufficiency of the Evidence

We must address Burtrain's second argument first because double-jeopardy considerations require this court to review a challenge to the sufficiency of the evidence before we review the other issues on appeal.  *See Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510; *Dean v. State*, 2021 Ark. App. 182; *Chavez v. State*, 2018 Ark. App. 527, 564 S.W.3d 268.  Burtrain contends that the circuit court erred in denying his motions for directed verdict because there was insufficient evidence to support his first-degree-battery conviction.  Specifically, he argues that there was insufficient evidence proving his identity as the person who shot Antonio Lea.  We disagree.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence.  *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491.  In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict.  *Id.*  We will affirm a judgment of conviction if substantial evidence exists to support it.  *Id.*  Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture.  *Id.*  Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion.  *Collins v. State*, 2021 Ark. 35,

4

617 S.W.3d 701. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury, not this court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Armstrong, supra.*

This court has noted that a criminal defendant's intent or state of mind is seldom apparent. *Benton v. State*, 2020 Ark. App. 223, 599 S.W.3d 353. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id.* Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

As charged in this case, a person commits first-degree battery if with the purpose of causing physical injury to another person, the person causes physical injury to any person by means of a firearm. Ark. Code Ann. § 5-13-201(a)(8) (Repl. 2024). A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2024).

On appeal, Burtrain admits that there is no dispute that Lea was shot while he was sitting in Perry's dining room. However, Burtrain argues that the State failed to provide substantial evidence that Burtrain was the individual who shot Lea. Although Burtrain

acknowledges that Lea identified Burtrain as the person who shot him, Burtrain argues that Lea's testimony was not credible and that there was no corroboration for Lea's testimony that he was the one who shot him. Burtrain questions the credibility of Lea's testimony because at the time of the incident, Lea told officers that he did not know the shooter's identity, and he notes that Lea waited until January 2021 to identify him as the shooter. He further argues that testimony that other people were present in the home that evening and that two types of shell casings were recovered creates a reasonable hypothesis that someone else is responsible for the shooting.

Notwithstanding Burtrain's arguments, we find that Lea's testimony that it was Burtrain who shot him constitutes substantial evidence to support the jury's verdict. Here, Lea unequivocally testified that Burtrain was the person who shot him and previously identified him in a photo lineup. This is sufficient. We have held that the uncorroborated testimony of one State witness can be sufficient to sustain a conviction. *Curtis v. State*, 2023 Ark. App. 216, 663 S.W.3d 441; *Bynum v. State*, 2021 Ark. App. 222; *Watkins v. State*, 2009 Ark. App. 124, 302 S.W.3d 635 (citing *Gray v. State*, 318 Ark. 601, 888 S.W.2d 302 (1994)). Weighing the evidence, reconciling conflicts in testimony, and assessing credibility are matters exclusively for the trier of fact—in this case, the jury. *Bynum*, *supra*. The jury may accept or reject any part of the witness's testimony. *Id*. The jury clearly gave credence to Lea's testimony. Therefore, we cannot say that the circuit court erred in denying Burtrain's motion for directed verdict.

B. Mistrial

6

Next, Burtrain contends that the circuit court should have granted him a mistrial, even though he did not move for one. Although the jury was admonished to disregard Lea's testimony that Burtrain is a gang member, he asserts that, under these circumstances, the admonition was insufficient to cure the prejudice. He argues that there is only one assumption to be drawn by Lea's testimony of his alleged gang membership, which, if believed by the jury, is that he "was more inclined to have a gun and use that gun in furtherance of gang-affiliated criminal activity." The State responds that this point is not preserved for appellate review. We must agree with the State because Burtrain did not move for a mistrial.

The testimony at issue came when the State was questioning Lea about his interaction with Burtrain before the shooting. The following colloquy occurred:

| | |
|---|---|
| PROSECUTOR: | What happened once the defendant arrived at Mr. Perry's? |
| WITNESS: | I seen him outside and from inside the house. I went outside to greet him, just talk to him. He was working on his car. It had been – at the time, it was running hot. So we, you know, he was acting a little sketchy and I had a bad feeling so I kind of left him alone. I went in the house and, you know, I was getting ready to leave because normally when D-Shot comes around, I leave, you know. I don't stay too long cause D-Shot is a gang member and I don't want to be associated with that. |
| DEFENSE COUNSEL: | Objection, Your Honor. |
| COURT: | What's the objection? |
| DEFENSE COUNSEL: | May I approach? |

7

COURT:                          Yes.

[BENCH CONFERENCE]

DEFENSE COUNSEL:                A, there's been no evidence that he's a gang member and
                                it's extraordinarily prejudicial.

COURT:                          Ms. Campbell, response?  What's the relevance of the
                                testimony?

PROSECUTOR:                     In the context, the relevance is that this is why he didn't
                                want to be around him, but I don't – I'll stop there.

COURT:                          I'll sustain the objection and order the jury to strike the
                                last response.

[BENCH CONFERENCE CONCLUDED]

COURT:                          The objection is sustained and ladies and gentlemen of
                                the jury, you are instructed to strike the last question and
                                response.  You may continue, Ms. Campbell.

A mistrial is an extreme and drastic remedy to be used only when there has been an error so prejudicial that justice cannot be served by continuing the trial.  *Russell v. State*, 306 Ark. 436, 815 S.W.2d 929 (1991).  A circuit court may grant or deny a motion for mistrial utilizing sound discretion, and the exercise of that discretion should not be disturbed on appeal unless an abuse of discretion or manifest prejudice to the complaining party is shown. *See King v. State*, 298 Ark. 476, 769 S.W.2d 407 (1989).  Among the factors considered by this court on appeal in determining whether a circuit court abused its discretion in denying a mistrial motion are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice.  *Hall v. State*, 2018 Ark. App. 474, 561 S.W.3d 333.  The abuse-of-discretion standard is a high threshold

8

that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Hortenberry v. State*, 2017 Ark. 261, 526 S.W.3d 840.

Burtrain contends that he preserved this issue for review by timely objecting to the Lea's testimony that he is in a gang. However, a circuit court is generally under no duty to sua sponte declare a mistrial. *Nickelson v. State*, 2012 Ark. App. 363, 417 S.W.3d 214. We typically decline to hold that the court commits reversable error by failing to order a mistrial on its own motion when none was requested. *Edwards v. State*, 315 Ark. 126, 864 S.W.2d 866 (1993). Moreover, failure to seek relief in the form of an admonition or a motion to declare a mistrial precludes this court's consideration of the issue. *Zachary v. State*, 358 Ark. 174, 188 S.W.3d 917 (2004) (citing *Puckett v. State*, 324 Ark. 81, 918 S.W.2d 707 (1996)). Stated another way, one cannot complain on appeal where one received all the relief asked for at trial. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997).

While Burtrain did object to Lea's testimony that he is a gang member, he never asked the court to declare a mistrial. The circuit court sustained his objection, and admonitions were given. Burtrain did not object to the admonition nor did he ask for clarification on the admonition. Therefore, because Burtrain failed to object to the sufficiency of the admonition, this court presumes that he found it satisfactory. *See Cotton v. State*, 276 Ark. 282, 634 S.W.2d 127 (1982) (appellant deemed to have found given admonitions satisfactory where he did not object to either admonition nor did he seek clarification on the admonitions).

Recognizing that he did not request further relief, Burtrain now argues that the error was so serious that the circuit court should have acted on its own initiative to declare a mistrial. Burtrain is apparently referring to the third *Wicks* exception to the contemporaneous-objection rule that applies when the error is so flagrant and so highly prejudicial in character as to make it the duty of the court to intervene on its own motion. *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). However, Burtrain does not cite *Wicks*, *supra*, or discuss its exceptions to the contemporaneous-objection rule and provides no convincing authority for the assertion that the court should have acted on its own initiative to declare a mistrial. *Sales v. State*, 374 Ark. 222, 289 S.W.3d 423 (2008). Accordingly, we hold that the circuit court did not err in failing to grant a mistrial sua sponte in the absence of a request by Burtrain.

Affirmed.

ABRAMSON and THYER, JJ., agree.

*Shaw & Elenbaas*, by: *Eric Nicholas Wilson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.